Hillsborough,
June 7, 1932.

MARIE BOUCHER, *Ex'x, App't* v. ALPHONSE LIZOTTE.

*Robert E. Earley*, for the appellant.

*Thomas J. Leonard*, for the appellee.

SNOW, J.   Alice Lizotte died testate leaving surviving her three children, Marie, Aimé and Alphonse.   The clause of her will inviting our attention reads: "I hereby . . . bequeath to Marianna Lizotte, wife of my son Alphonse Lizotte, the sum of $500. to have and to hold to her and her heirs forever."   This was followed by bequests to Aimé of one dollar, and to Marie of the residue.   The only question presented is whether Alphonse was "named or referred to" by the testatrix within the meaning of the statute, "Every child born after the decease of the testator, and every child or issue of a child of the deceased not named or referred to in his will, and who is not a devisee or legatee, shall be entitled to the same portion of the estate, real and personal, as he would be if the deceased were intestate."   P. L., c. 297, s. 10.

The sole argument advanced ·by the appellee is that the use of "Alphonse" as descriptive of his wife, a legatee, is not such a reference to him as to indicate an intention to bring him within the statute. The fallacy of the argument lies in the assumption that the statute requires language affirmatively disclosing the testator's purpose to disinherit his lineal heir, whereas the legislative intent was to provide against an omission of the heir by mistake or failure to remember the

natural object of his bounty. Any naming of, or reference to, the heir which demonstrates that he was not out of the mind of the testator at the time of making his will gives rise, under the statute, to a conclusive inference that the testator's failure to provide for him was not the result of mistake or forgetfulness. This is made plain by a review of the history of the legislation and its interpretation.

The language of the statute first appeared in *s.* 9 of the Revised Statutes (1842). This section was a revision of the act of July 2, 1822, which enacted, "That if there be any child or any lineal heir of a child in the descending line, which has no devise or legacy by the will of the deceased father or mother, and which is not named or referred to in the will *in such manner as to shew, that it was not out of the mind of the testator at the time of making the will,* or if any child shall happen to be born after the death of the father, and no provision shall have been made in his will for such posthumous child, every such child or heir shall inherit and have assigned to it the same portion in the estate of the deceased, as it would be entitled to, if such deceased person had died intestate." Laws 1822, *c.* 28, *s.* 3. The italics are ours.

The emphasized words define the manner of naming or reference which will bar intestacy as to the lineal heir, and discloses that the underlying purpose of the legislature was to provide against the consequences of forgetfulness or mistake. It must be such as will show "that it [the heir] was not out of the mind of the testator." This was the sense in which the expression "named or referred to" was used at the time of the revision, and it is a rule of statutory construction that the sense in which words are understood at the time of passage will be adopted when, as here, there is nothing in the enactment inconsistent with such meaning. *Mayo* v. *Wilson,* 1 N. H. 53, 55; *Hale* v. *Everett,* 53 N. H. 9, 170. "The past legislation . . . may be consulted to find the meaning of doubtful expressions, upon the principle that where particular terms or phrases are used or understood in one sense . . . with reference to a particular subject, it is reasonable to suppose them to continue to be used in that sense." *State* v. *Canterbury,* 28 N. H. 195, 219.

That this court has consistently and invariably understood that the words "not named or referred to" were employed in the revision of 1842 and subsequent codifications in the same sense as in the act of 1822 is demonstrated in all the decisions under the statute. In *Gage* v. *Gage,* 29 N. H. 533, 543 (1854), after discussing the history of the earlier legislation, *Bell,* J., commenting on the "clear, distinct and

perspicuous rule" embodied in R. S., *c.* 156, *s.* 9, as signifying "that no testator should be understood to intend to disinherit one of his children or grandchildren . . . upon any less clear evidence than his actually naming or distinctly referring to them personally, *so as to show that he had them in his mind,*" held that "The naming of one person, however closely related to another, without more, is no reference to that other"; or more specifically that "the naming of a grandson and describing him as such, is no reference to his father or mother." The court concludes: "that the true rule of the law is just what is laid down in the statute; if a child or grandchild is not named or referred to in the will, and is not a devisee or legatee, he will take his share, as if the estate was intestate." In *Farnum* v. *Bryant*, 34 N. H. 9, 18, 19, the court, construing a will dated in 1829 of a testator dying in 1852, after reciting the terms of the act of 1822, states that "The enactments of the Revised Statutes on this subject *are precisely similar.*" In *Smith* v. *Sheehan*, 67 N. H. 344, 347, where the bequest of the residue was to "my legal heirs," the court after quoting the earlier statutes held that the word "heirs" was used in the sense of "children" and showed that the testator by the words employed "*had in mind* his five children" as certainly "as if he had inserted their names in his will," and that such children were "referred to," as well as legatees and devisees. In *Smith* v. *Smith,* 72 N. H. 168 it was held that a posthumous child was sufficiently referred to by a bequest reading "if there are one or more children born to me who are living at the time of my death, I give etc". It was there said, citing and quoting from the act of 1822, "It cannot reasonably be said that . . . one whose birth was imminent . . . was '*out of the mind of the testator at the time of making the will*'." The italics in the quotations are ours.

Applying the established test to the language of the will here the gift to the "wife of my son Alphonse Lizotte" forbids the inference that Alphonse was "out of the mind" of the testatrix. She expressly names and refers to him in defining her gift to a member of his family.

The appellant's appeal is sustained and the

*Probate decree reversed.*

PEASLEE, C. J., was absent: the others concurred.