Hillsborough,
May 18, 1948. } No. 3743.

Hills & a. Trustees & a. v. D'Amours, Attorney General.

D'Amours, Attorney General v. Hills & a. Trustees & a.

134

*Wyman, Starr, Booth, Wadleigh & Langdell* (*Mr. Wyman* orally), for Hills and Wyman, trustees.

*Hamblett, Griffith & Moran* and *Louis E. Wyman* (*Mr. Hamblett* orally), for Jessie Norwell Hills and Indian Head National Bank, trustees.

*McLane, Davis, Carleton & Graf* and *Stanley M. Brown* (*Mr. Brown* orally), for the defendants Dunn.

*Ernest R. D'Amours*, Attorney General (by brief and orally), *pro se*.

*Morse & Grant* and *Thomas L. Marble* (*Mr. Morse* orally), for Hudson school district, *amicus curiae*.

DUNCAN, J.   Subject to exception by the trustees, evidence was received in the course of the hearings which was descriptive of the "general plan" referred to in the Hills will insofar as such a plan was disclosed to Stedman Hills during the testator's lifetime.   It is difficult to justify receipt of this evidence unless it was competent upon the question of the exercise of discretion by the Creutzborg trustee. It was clearly incompetent in aid of construction of the Hills will, or to restrict its broad provisions within the narrower confines of a particular plan.   The law is too well settled to require extensive citation that the writing required by the statute of wills may not be modified, varied or supplemented by parol.   4 Page, Wills, s. 1625. While evidence may be received to establish the circumstances surrounding the testator when he acted, his intention must be derived from the contents of his will and not from his declarations concerning his intent, even when referred to by the will.   "The doctrine of incorporation . . . may not be invoked to read into the will the recollection of the executor."   *Reynolds* v. *Reynolds*, 224 N. Y. 429, 435.   No

precisely analogous situation has been considered in this jurisdiction; but the principles which were considered controlling in *Hastings* v. *Bridge*, 86 N. H. 247, are controlling here. See also, *Souhegan National Bank* v. *Kenison*, 92 N. H. 117. The general rule which precludes use of a testator's declarations of intention in aid of the construction of his will was fully considered in *Jones* v. *Bennett*, 78 N. H. 224, 226: "[The testator's] intentions must be gathered from the words [he] used and not from [his] declarations made before, at the time, or after the will was made. . . . " See also, *White* v. *Weed*, 87 N. H. 153; *Ladd* v. *Ladd*, 74 N. H. 380; *Olliffe* v. *Wells*, 130 Mass. 221; Scott, Trusts, *ss*. 38, 164.1. It follows that the testator's attempt to incorporate into his will by reference "the general plan . . . disclosed" to his trustee was ineffective, and evidence of his discussions of this topic was incompetent to establish his intent.

The provisions of the will are sufficient to establish a valid trust without regard to the "general plan." *Haynes* v. *Carr*, 70 N. H. 463, 480. See Scott, Trusts and the Statute of Wills, 43 Harv. Law Rev. 521, 544. The charitable beneficiary, the trust property, and the trustee are identified. The purpose of the trust is clearly set forth. That the plan was not an essential part of the trust, may be gathered from its description as "general," from the completeness with which the testator's purposes are stated in the will, and from the provisions relating to a successor trustee, to whom the general plan would not have been disclosed by the testator. The validity of the trust is not attacked in these proceedings, and the reference to the "general plan" does not affect it. *Souhegan Bank* v. *Kenison, supra*. See also, *Becker* v. *Fisher*, 112 Oh. St. 284; *In re Thompson's Estate*, 282 Pa. 30; 3 Page, Wills, *s*. 1215.

The authority of the Creutzborg trustee to determine that any of the proposals for execution of the Hills trust is "in accordance with the intent of said Alfred K. Hills" is called in question by the Dunns. Her discretion is to be exercised not solely with reference to the intent disclosed by the Hills will, but with reference to her own knowledge of what that intent was. For such bearing as the evidence of Dr. Hills' declarations concerning his "general plan" had upon the good faith of the Creutzborg trustee, it was admissible upon that issue. But since it was received, and so far as appears used, without limitation, the exception to its receipt is sustained. There was also received in evidence subject to exception considerable correspondence of the trustees and others relating to the plan, and studies and suggestions as to how the trust might best be carried out. This evidence had

some relation to the same issue. In any event it is not apparent that the trustees were prejudiced by its reception.

Exception was also taken by the trustees to the receipt of evidence of declarations of testamentary intention made by Mrs. Creutzborg. There was no purpose for which this evidence was competent, and it was erroneously received. *Jones* v. *Bennett, supra*.

The Hills trustees have excepted to the provisions of the decree making mandatory the execution of the plan approved, because the decree "fails to recognize the discretionary power vested in the named trustee . . . and substitutes the judgment of the Court for the judgment of the Trustees." Exception is also taken to the finding that the trustees "agree in principle in urging acceptance of Attorney General's Exhibit B" (the plan approved). These exceptions are sustained. The record fails to indicate that the trustees sought approval of the Attorney General's plan. It discloses objection to its consideration, and to the reception of evidence concerning it. In large part, the objection arose out of the fact that the plan called for utilization of the entire Hills fund for capital investment without provision for endowment and with no assurance that the Creutzborg funds would be available or that the school district of Hudson would see fit to undertake to furnish the staff and curriculum called for by the plan or to pay the expenses of operation.

Dr. Hills' will specifically provided that his trustee named therein should have the "power and authority to expend such portion of the principal . . . for the foundation and establishment of said . . . school . . . as the trustee shall deem advisable, in the exercise of his judgment; and that after such foundation . . . the remaining principal . . . shall be considered to be an endowment. . . . " Clearly the discretion to determine whether all or only a part of the principal shall be used to establish the school rests with the trustee and not the Court; and while the Court may, by decree, approve the trustee's determination of the manner in which the testator's purposes shall be carried out, it may not make the determination in the first instance. *Woodward* v. *Jolbert*, 94 N. H. 324. See also, *Petition of Rochester Trust Company*, 94 N. H. 207.

The trustees sought no approval of the plan approved by the decree. The plans which they proposed were not approved. But the exercise of their discretion was not thereby exhausted. No more was it limited to approval of the only plan remaining before the Court. On the other hand, the Court's authority was limited to confirmation of the exercise of discretion by the trustees.

To the finding and ruling that "the first three proposals . . . are neither feasible, nor do any one of them fall within the provision of the will of Alfred K. Hills," the petitioning trustees duly excepted. The plans referred to were those which they proposed. How far the Trial Court's conclusions were affected by the parol evidence concerning the testator's "general plan," it is impossible to say; but even upon that evidence the findings and rulings would be difficult to sustain with respect to all three proposals. The plans must be judged by the requirements of the will, that the fund be used "to found, establish, organize and endow an association, school or corporation, for educational, charitable and industrial purposes at Hudson, New Hampshire, to be called the 'Alvirne Industrial School,' for the benefit of the inhabitants of the State of New Hampshire."

The first plan proposed by the petitioners was for consolidation of the Hills and Creutzborg funds. Approval of this plan was properly withheld. While the Hills fund was to be held pending Mrs. Hills' lifetime, no accumulation of income was intended, since it was to be paid to Mrs. Hills. Upon her waiver of the will and election to take her statutory share, the right of the trustees to deal with the fund was accelerated. Although the testator contemplated the use of a fund of approximately a million dollars, it does not follow nor is it claimed by the trustees that such a fund is essential to the execution of his purposes. If acceleration did not require immediate establishment of the school, neither did it call for accumulation until the original amount should be recovered. The plan was also objectionable from the standpoint of the Creutzborg will. This will in contrast to the prior will of 1919 evidences no purpose that the funds should be combined. Mrs. Creutzborg's purpose in 1920 was to endow an institution such as Dr. Hills intended, not an association for the combination of the funds. Mrs. Hills might not properly transfer the fund in her charge to the Hills trustees or others merely for purposes of accumulation.

The alternative plan originally submitted, that of a school to be established in the buildings on the Hills estate, stands upon a different footing. While less detailed than the later plans its outlines fall within the purposes expressed in Dr. Hills' will. Mrs. Hills declared it to be "the thing that the Doctor left his property for." The exercise of her power of appointment in favor of a school such as it describes would not exceed her discretion. The Court found the plan not "feasible." Why the finding was made is not plain. The plan is sufficiently modest to be fully possible of accomplishment with funds

presently available to the Hills trustees. If the plan was thought to be impracticable in the sense that the benefits inuring to "the inhabitants of the State of New Hampshire" would not be as great as under later plans submitted, disqualification of the plan as a vehicle of Dr. Hills' charity does not follow as a matter of law. Modesty of beginning is not precluded by the will, nor would adoption of the plan preclude expansion of the school as the trustees might find it possible. There was little evidence regarding the plan, but we find none to warrant a finding that it is not feasible. Whether it should be adopted by the trustees is a matter to be determined in the exercise of discretion.

The final proposal advanced by the trustees, calling for the establishment of "Alvirne School" to support and implement a school to be owned and operated by the Hudson school district on what is now the Hills land, the funds for construction at a cost of $300,000 to be furnished by the corporation, was also disapproved by the Court. Presented in greater detail than the plan for a wholly private school, it promised more immediate benefit to a larger number of inhabitants of the state. Contrasted with the Attorney General's plan, it would place upon the school district a burden of support more closely approximating its normal obligation, both by reason of smaller expense and the proposed retention of part of the Hills fund for purpose of expansion and endowment.

The objection advanced by the Dunns that the testator's purpose was to establish a wholly private school was overruled by the Trial Court in approving the Attorney General's plan. "The Court finds that the private school method of performance which was discussed with the trustee was only a subordinate detail of the testator's general plan . . . talked over merely as a means of effectuating the plan in the light of the conditions existing in the field of education in the years around 1915." These findings are confirmed to the extent that they support the approving action of the Creutzborg trustee. They are unnecessary to support the action of the Hills trustees. The Hills will contains no provisions requiring a school free from public interest or control, and no reason is apparent why the fund may not be used for the establishment and endowment of either a private school or one which is publicly owned. The record discloses no evidence tending to show the plan to be unfeasible, unless the division of control between public and private authority can be considered too uncertain or too likely to produce conflict to admit of successful operation. Neither the trustee Hills nor the Commissioner of Education con-

sidered that this feature vitiated the plan. The latter testified that the school could be operated as a unit, and with respect to control would not differ materially from presently operating private schools which qualify to receive public funds. The extent of private control of the proposed school would obviously be less. Although there was evidence that the school would be less elaborate than that proposed by the Attorney General, the evidence does not warrant the finding that the trustees' plan is not feasible. The school would be more feasible than that called for by the plan approved, to the extent that the funds available for operation and maintenance would be increased by retention of a part of the Hills fund.

The school is brought within the intent implied in the use of the word "industrial" by features calculated to afford vocational training which might not be otherwise available in a public school. We do not consider that the transfer of the Creutzborg funds under this plan would be an abuse of the trustee's discretion. The exceptions to the finding or ruling that the trustees' proposals are not feasible or within Dr. Hills' intent are sustained as to the two plans last submitted by the trustees.

We turn now to a more particular consideration of the powers of the trustee under the will of Mary F. Creutzborg. Her approval of the plans proposed by the Hills trustees has already been indicated. Her disposition toward the plan approved by the Court has not been stated. The Court found that she may consistently approve it. The Court ruled that "the use of the Hills fund as herein decreed will be a use in accordance with the intent of Alfred K. Hills," and that "it is now incumbent upon Jessie Norwell Hills . . . to determine whether or not in her judgment the plan as contained in this decree does fall within the intent of Alfred K. Hills." After a consideration of the extent of the powers of the trustee with reference to the approval of a "private school . . . with a private board of trustees," which the Court considered would be beyond her power of approval "until established and operating with pupils," the Court ruled as follows: "The Hills fund by this decree is dedicated to a specific method of use in connection with the School District of the Town of Hudson under specific safeguards, and the proposed school is to be conducted in a specified manner. Its future is not dependent upon the personality of a private board of trustees but is dependent on the continuing program of the Board of Education of this State. Because of the certainty of the establishment of the school and the manner in which the school will be conducted upon acceptance by the Hudson School

District, the trustee need not wait to observe the actual operation and conduct of the school."

As applied to the plan approved, the Trial Court's view of the purport of the Creutzborg will does not differ materially from the view urged by the Hills trustees and thus expressed in their requests for findings and rulings: "The practical certainty of organization and conduct of a school on the Hills estate as approved by Mrs. Hills satisfies the terms of the Creutzborg will. Under all the circumstances the words *organized* and *conducted* as used in the . . . will should be interpreted as though they read *to be organized and conducted*."

Numerous exceptions were taken by the Dunns to findings and rulings upon this aspect of the case. Substantially all are predicated upon the contention stated by the Trial Court: "that the [will] requires that the school be completed and operated as a school before the trustee . . . can exercise her judgment as to whether or not [it] falls within the intent of Dr. Hills."

Counsel for Mrs. Hills urge that she has an unrestricted discretionary power to exercise her own judgment for which the "judgment of any court or individual" should not be substituted so long as she acts neither capriciously nor in bad faith.

The question of when the power of the trustee may first be exercised rather than its extent is the point directly in issue. In abbreviated form, the provisions of the will upon which the controversy centers are these: "Alfred K. Hills . . . provided by . . . his will for the establishment . . . of the 'Alvirne Industrial School' as will more fully appear by his said will. . . .

"Desiring to devote . . . my estate to the Endowment and object of said school, provided said school is organized and conducted in accordance with the intent of said Alfred K. Hills in the judgment of Jessie Norwell Hills (and she shall be the sole and only judge thereof,) I give . . . my estate to Jessie . . . with power and authority to give the whole or any part of said . . . estate . . . to said school. . . . "

Notice should also be taken of the language used in providing for the gift over, which would benefit the Dunns: "In the event that my said Trustee . . . shall not have applied the whole of said residue . . . to the object of said school as above provided . . . not deeming it wise or expedient so to do, I direct. . . . "

It is significant that the proviso relating to the manner of organization and conduct of the school is contained in a preliminary recital of the testatrix' purpose, rather than in the bequest itself; and that

organization and conduct of the school are not stated as conditions precedent to exercise of the trustee's power of appointment to the school. The words "provided said school is organized and conducted in accordance with the intent of Alfred K. Hills" are accordingly construed to be descriptive of the kind of school which the testatrix desired to endow, rather than the stage of development which the school must reach before the trust funds may be applied by the trustee.

In effect the testatrix has said, "I wish to devote my estate to endowment of a school which is (i.e. shall be) organized and conducted as Mrs. Hills considers Dr. Hills intended, and she alone shall determine whether it is such a school; and so I leave my estate to her, to give to the school when she deems it wise and expedient." She did not say, "I give my estate to Mrs. Hills to give to said school, provided that when she does so said school is in fact organized and being conducted as she considers Dr. Hills intended it should be." Cf. *City Missionary Society* v. *Foundation*, 101 Conn. 518; *Reithmiller* v. *Carr*, 137 Neb. 284, 285.

The construction adopted finds confirmation in other provisions of the will, and in a consideration of the circumstances under which it was executed. Repeated reference is made in the will to the application of the residue "to the object of said school," a phrase suggesting that the donor did not expect the school to be in actual operation before her funds should be used. The Hills will, to which she referred for a description of the school, provides for an institution not confined to the conventional concept of classrooms in use, but embracing an "association . . . or corporation, for educational, charitable, and industrial purposes." Such an institution could be found to be organized and conducted in accordance with Dr. Hills' expressed intent, even though the point of conducting a "school" had not been reached. *City Missionary Society* v. *Foundation, supra.*

Further, the Hills will provided that the school should be established after the death of the very person whom Mrs. Creutzborg selected to determine whether it should become her legatee. It is no doubt probable that she knew of Mrs. Hills' waiver of her husband's will, freeing from her life interest so much of the residue as exceeded her statutory share. It does not follow however, that she presumed that the Hills trustees might legally disregard the will to commence the immediate operation of a school, or that with the reduced fund at their disposal they would be able to do so in the manner intended by Dr. Hills. How readily Dr. Hills' purpose could be ac-

complished might well depend upon the availability of the endowment which the testatrix was undertaking to provide. See *Adams* v. *Page*, 76 N. H. 96, 98.

Adoption of the views advanced by the Dunns would inject into the administration of the trust the controversial question of what constitutes the actual conduct of a school. Must there be one pupil or ten? Must there be teachers teaching all subjects proposed for the curriculum? Must all departments of the school be engaged in some activity before the trustee is entitled to determine whether the school falls within the requisite intent? There is no suggestion in the will that such questions must be determined as a matter of law before her trustee could act. On the contrary, the absolute discretion conferred upon the trustee suggests that the testatrix sought to foreclose such controversies. The discretion conferred was not intended to be governed by external standards, but by the trustee's personal judgment, to which the matter was confided. See *Hall* v. *Harvey*, 77 N. H. 82; *Carlton* v. *Henderson*, 79 N. H. 416; Restatement, Trusts, s. 187, *comment j*.

The only condition stated upon which the alternative gifts to the Dunns and others is to become effective is non-application of the funds to the object of the school, the trustee "not deeming it wise or expedient to do so." The gift over is not made dependent upon the failure of the Hills trustees to establish and conduct a school. Cf. *Second* v. *First Cong. Society*, 14 N. H. 315. The necessity that an organization shall be in existence before transfer arises from the need for an entity to take the gift. Conduct of a school is not essential for this purpose, nor is it a prerequisite to a transfer which shall comply with the intent of the testatrix. The exceptions of the Dunns which relate to this issue of the case are accordingly overruled.

It is not to be assumed that our interpretation of the will operates to release the trustee from her obligation before any funds are transferred to satisfy herself that the school is the kind which Dr. Hills intended. It must be such a school, in her judgment; but her judgment need not await a school in actual operation before it may be exercised. The proviso of the will requires selective use of her power, without postponing its exercise beyond the time when the beneficiary becomes available. Having in good faith determined that the organization which she proposes to endow in the name of Mrs. Creutzborg answers the description of what in her judgment Dr. Hills intended, she is at liberty to transfer the funds to it at such time as she deems "wise and expedient." In determining whether it is "wise and

expedient" to do so before the characteristics of the school become fixed by actual operation she should consider whether its form and organization is such as to assure with reasonable certainty that the qualities and purposes bringing it within Dr. Hills' intent will persist through its further development. If the legal structure of the school is such as to assure perpetuation of the proper "object," immediate transfer of the fund may be deemed warranted.

The question of the duration of the authority of the Creutzborg trustee is also the subject of controversy. The Hills trustees contend that execution of the trust is to be "at some time within the maximum period, under the laws of the State of New Hampshire, of lives in being plus twenty years." On behalf of the Creutzborg trustee it is asserted that the limitation "must include at least the life of Jessie Norwell Hills." The Dunns take the position that the trust must be executed, if at all, within a period of twenty years from the date of death of the testatrix, or the probate of her will.

The findings and rulings of the Trial Court in substance adopted the view of the Hills trustees, and were duly excepted to by the Dunns. "The intent . . . was to give the power of disposal of the fund to Jessie Norwell Hills during her lifetime and to further give her the right to appoint by will or deed a successor trustee or trustees to act after the death of Jessie Norwell Hills. She could not have intended that the right to transfer all or part of the fund to the school be limited to twenty years 'from the date of the probate of this will or my death' as the Dunns contend. The addition of the words 'as the case may be limited by lives and according to the laws of the State of New Hampshire' indicates a desire to escape a voiding of the gift by the rule against perpetuities but not to limit the power of transfer to the time urged by the Dunns. Jessie Norwell Hills is still alive and has the power of transfer during her life and by will upon her death. She has the further power to appoint by will or deed a trustee or trustees with equal powers and like those conferred upon her to execute the trust within twenty years from the death of Jessie Norwell Hills." Paragraphs C and D of the Court's decree contained comparable provisions to which the Dunns also excepted. In so far as the findings and rulings confirm the power of Jessie Norwell Hills to dispose of the trust fund during her lifetime, by deed or by will, they are sustained. The ruling and order that she has the power to appoint a successor or successors to act within twenty years of her death cannot be permitted to stand.

As we construe the provisions of the will, the power of the named

trustee, in her discretion, to apply the residue to charitable purposes continues throughout her lifetime, and may be exercised by will. The twenty year limitation applies solely to the power of any successor which she may appoint. The explicit directions of the will make it plain that the twenty year period was intended to commence, not at the death of the named trustee, but at the death of the testatrix, or the date of probate of her will.

By granting authority to the named trustee to transfer the fund during her lifetime, the testatrix might reasonably expect accomplishment of her purpose, if the trustee should live out her normal expectancy. The testatrix had before her the contingency of the early death of her trustee before her purpose could be accomplished. To guard against the contingency, she provided for a successor trustee. The fact that he was unnamed suggests that available persons were thought to be either unsuitable, or unlikely to have Mrs. Hills' intimate knowledge of her late husband's intent. The rule against perpetuities was also to be considered. Any interest suspended for more than lives in being and twenty one years might be held invalid. *Asylum* v. *Lefebre*, 69 N. H. 238, 243. Hence the necessity for a time limit within which an unnamed successor should be required to act.

Reëxamination of the provisions of the will confirms this interpretation. The named trustee is directed to accumulate income "during the period of her life," with authority to give the fund to the school. "In the event" that it shall not be applied to this object "in her lifetime," then authority is granted to appoint a successor "to execute this trust within the maximum period of twenty years. . . ." Under succeeding paragraphs, if Mrs. Hills or her successors shall not deem it wise or expedient to apply the fund to the object of the school, they are directed to pay one half to the Dunns, and authorized to dispose of the other half by will or deed.

The latter provisions, applicable to both Mrs. Hills and her successors, become operative in the event that she or they shall not have applied the residue to the object of the school "as above provided and within the period and limitations above specified." More than one limitation was considered to be involved. Had it been intended that the alternative gifts should take effect at the end of twenty years regardless of the length of Mrs. Hills' survivorship, there would have been no occasion to refer back to the "period and limitations" already specified. The gifts would have been directed upon the failure to apply within "the twenty year period above specified."

The powers of Mrs. Hills and of her successor are no less "equal" and "like" in their scope, because they differ in duration. They are the same, during the period in which each may be exercised. As a matter of grammatical construction, the phrase "to execute this Trust within the maximum period of twenty years . . ." modifies the words "trustee or trustees," rather than "equal power and like those conferred upon her" from which it is set off by a comma. It describes the purpose for which the named trustee is authorized to appoint successors, not the power to appropriate the fund previously conferred upon her which was stated, without limitation, to be for her lifetime.

The defendants Dunn strongly urge that the time limitation results from compliance by the draftsman with requirements of the New York law relating to suspension of alienation; that considered with reference to that law, the will indicates a purpose to limit any transfer for purposes of the school to twenty years. We are told that the references to Mrs. Hills' lifetime are explained by the rule that a term in gross is invalid under the New York statute, (*Hone's Executors* v. *Van Schaick,* 20 Wendell (N. Y.) 564; *McGuire* v. *McGuire,* 80 App. Div. (N. Y.) 63 unless appended to a grant for not more than two lives in being. Aside from the complexities and refinements of the New York doctrine, elaboration of which is not required here, (See, Whiteside, Suspension of the Power of Alienation in New York, 13 Cornell L. Q. 31, 167) the occasion for its use in this case is made doubtful by evidence contained in the will. The will stated and declared: "my domicile and home is at Hudson, Hillsborough County, New Hampshire . . . "; and the very limitation which we are called upon to interpret is expressed with reference to "the laws of the State of New Hampshire." Clearly the attention of the testatrix was directed to the law of New Hampshire rather than New York. The New York law is not controlling (*New Britain Trust Co.* v. *Stanley,* 128 Conn. 386) nor is it claimed to be pertinent except as an aid to interpretation. We do not find it of assistance in interpreting this will.

The argument that it should be considered is not helpful because based upon a premise which pre-determines the conclusion reached. It assumes rather than demonstrates that the testatrix intended a twenty year period in gross, applicable regardless of the date of death of the named trustee. The competent evidence does not lead to this conclusion. The testatrix could have had no reason to establish a limitation of twenty years from her death, except her own conception

of what she desired. It was not prompted because of the rule against perpetuities, for a longer period could be provided without violation of the law of New Hampshire or New York. Either she intended to limit execution of the trust by Mrs. Hills and her successor together, or by her successor alone. It is clear that the limitation applies to a successor, and no claim is advanced that it does not.

The reference to a "maximum" period of twenty years may perhaps result from familiarity with the New York rule. The life of the successor trustee under that rule would be the second life in being. Unless the trust should terminate at his death, it would be invalid. Hence the twenty year period was made a "maximum" rather than an absolute limit, to indicate that upon the earlier death of the successor the trust should terminate (i.e. "as the case may be limited by lives"). Cf. *Montignani* v. *Blade*, 145 N. Y. 111; *Kahn* v. *Tierney*, 135 App. Div. (N. Y.) 897, *aff.* 201 N. Y. 516. Use of the word may also be explained by the fact that two twenty year periods were mentioned, one commencing at death, the other on probate of the will. Regardless of what occasioned the language used the question of whether Mrs. Hills' powers were intended to be limited by the twenty year period if she should survive it remains unanswered.

Intention that the limit should apply to the named trustee could readily have been indicated by qualification of the grant of powers for life, by means of a proviso that they should nevertheless be exercised not later than twenty years from the testatrix' death. Likewise a provision requiring execution of the trust within twenty years, whether by the named trustee or her successor, would have served the purpose. No such provision was made; and we find no competent evidence of intent to limit Mrs. Hills' power to deal with the fund if she should survive the testatrix by more than twenty years. The language of the will indicates that the testatrix intended to impose an arbitrary time limit upon execution of the trust which should be applicable only in the event of Mrs. Hills' death shortly following her own.

Until such time as the trustees may seek approval of the plan which the Trial Court undertook to approve, or of some other plan which similarly contemplates omission of any "association, school or corporation" founded, established and organized by the Hills trustees there will be no occasion to determine whether such a plan is a permissible deviation (See *Exeter* v. *Robinson Heirs*, 94 N. H. 463), or may properly be approved by the trustee under the Creutzborg will. By their petition the Hills trustees seek advice concerning plans

advanced by them. Since a decree effectuating one of these plans may be entered, if the trustees so move, there appears to be no occasion for action under the bill brought by the Attorney General which will have served its purpose. Dismissal of the bill however may properly await final disposition of the trustees' petition.

Most exceptions not heretofore considered appear to be governed or made immaterial by what has already been said. The portion of the decree prescribing action to be taken by the school district was not mandatory upon the district, but merely imposed conditions upon which transfer of the Hills assets was to be made. Since the decree must be modified for reasons previously indicated, the exceptions fall.

Exceptions relating to the omission from the decree of express provision for the Alvirne Chapel need no consideration, since suitable provision will presumably be made in any plan or decree which may be entered upon reconsideration.

The exceptions to the ruling that "the Creutzborg fund cannot be transferred or used in connection with the school established by the Hills fund except for endowment purposes" are overruled. The ruling correctly states the purpose for which the Creutzborg fund may be used. If it is taken to relate to the authority given to the Creutzborg trustee to appoint one half of the residue to charity in the event that none or only a part of the fund is transferred to the school, it is also correct. If Mrs. Hills should determine that the school as finally organized should not receive any or all of the fund in her charge, then the school will be eliminated as a beneficiary, and may not thereafter share in the half then directed to be used for charitable or educational purposes. *Souhegan National Bank* v. *Kenison, supra; Petition of Rochester Trust Co.*, 94 N. H. 207, 209.

No reason for the taking of further evidence is apparent, and a decree may be entered which conforms to the views herein expressed.

*Case discharged.*

JOHNSTON and BLANDIN, JJ., dissented in part; the others concurred.

JOHNSTON and BLANDIN, JJ., were of the opinion that the judgment of Jessie Norwell Hills cannot be exercised under the eighteenth clause of the Creutzborg will until said school is in fact organized and conducted, and that the gift to the school must be made, if at all, by either Mrs. Hills or the successor trustee within the maximum period of twenty years from the decease of Mrs. Creutzborg or the probate of her will. Otherwise they concurred.