Hillsborough County Probate Court
No. 86-275

# *In re* ESTATE OF GUY C. CAME

July 23, 1987

*Gottesman and Hollis P.A.*, of Nashua (*Nicholas D. Brown* on the brief, and *David M. Gottesman* orally), for the petitioner, Sandra Wolfe.

*Christy, Tessier, Guay & Innes*, of Manchester (*Pauline L. Guay* on the brief and orally), for the respondent, Jane Stanton, Executrix of the Estate of Charles R. Stanton.

*Wadleigh, Starr, Peters, Dunn & Chiesa*, of Manchester (*Theodore Wadleigh* on the brief and orally), for Winthrop Wadleigh, Executor of the Will of Guy C. Came.

THAYER, J.    This appeal is from a decision by the Hillsborough County Probate Court (*Cloutier*, J.) denying the request of the petitioner, Sandra Wolfe, for recognition as a pretermitted heir under RSA 551:10. We reverse the probate court's decision.

Guy C. Came died testate on February 27, 1985. He left no surviving spouse, but was survived by his daughter, Sandra Wolfe, the child of his first marriage to Marion G. Came. At the time of the will's execution, September 14, 1979, Came's second wife, Ruth, had died and, thus, was not named as a specific legatee or devisee in the instrument. Came's daughter Sandra also was not named as a specific devisee or legatee. The will provided that Came's first wife, Marion, was to receive a specific cash bequest to carry out the terms of their divorce decree, but she was to receive this bequest only if she survived him and had not remarried.

The rest, residue, and remainder of Came's will was devised to his executor, Winthrop Wadleigh, in trust, with the net income to be paid to or for the benefit of Charles R. Stanton, Ruth Came's son, and upon Stanton's death to his wife, Jane Stanton. Specifically excepted from the remainder interest of the testator's estate, however, was a revocable, non pour-over, *inter vivos* trust executed by Came on July 21, 1975. The specific language of Came's will at issue states:

> "All the rest, residue and remainder of my property, real, personal and mixed, wherever found and however situated (except the trust created by me on July 21, 1975 with the Merchants National Bank of Manchester as Trustee) I give, bequeath and devise to Winthrop Wadleigh in trust . . . ."

The trust document referred to in Came's will provided that during Came's life: (1) the net income was to be paid to Came; (2) the trustee could pay out portions of principal to or for Came's "proper support, comfort, maintenance, benefit or welfare[;]" (3) Came could withdraw "such property or sums as he [might] request in writing to the Trustee[;]" and (4) Came could revoke the trust entirely by "written instrument . . . deposited with the Trustees." The trust further provided that the petitioner was to receive the income from whatever was left of the trust after the deaths of Came and his second wife Ruth, and upon the petitioner's death, the net income of the trust was to be paid to the petitioner's issue. If no issue survived her, then the net income was to be used annually for scholarship purposes for the post secondary education of graduates of Milford Area High School.

Guy Came's will was proved in common form by the Hillsborough County Probate Court. Subsequently, Sandra Wolfe petitioned the probate court, requesting a ruling that she was a pretermitted heir as defined by RSA 551:10, thereby entitling her to a statutory share of the estate. The respondent, Jane Stanton, widow of Charles R. Stanton, was a party to this proceeding. After a hearing, the probate court issued a written decision dated May 27, 1986, denying Sandra Wolfe's petition, and she appealed.

The petitioner presents for our review three allegations of error by the probate court: (1) in ruling that the petitioner was named or referred to in the will and that she was not, therefore, a pretermitted heir within the meaning of RSA 551:10; (2) in using the doctrine of incorporation by reference to incorporate the non pour-over, *inter vivos* trust into the will, thus making the trust part of the testator's testamentary plan; and (3) in admitting into evidence the provisions of the testator's non pour-over, *inter vivos* trust as bearing on the testator's intent on the question of pretermission. We conclude that the probate court erred, and that the petitioner was not named or referred to in the will. The petitioner was, therefore, a pretermitted heir as defined by RSA 551:10.

RSA 551:10 reads as follows:

> "Every child born after the decease of the testator, and every child or issue of a child of the deceased not named or referred to in [the] will, and who is not a devisee or legatee, shall be entitled to the same portion of the estate, real and personal, as . . . if the deceased were intestate."

The statute thus sets out three requirements that are applicable to this case, the fulfillment of which will result in a finding of pretermission: the child is (1) not named in the will; (2) not referred to in the will; and (3) not a devisee or a legatee under the will. C. DEGRANDPRE, 7 NEW HAMPSHIRE PRACTICE, WILLS, TRUSTS AND GIFTS § 372 (1986). The purpose of the statute is to prevent a mistake or unintended failure by the testator or testatrix "to remember the natural object of his [or her] bounty." *Boucher v. Lizotte*, 85 N.H. 514, 514–15, 161 A. 213, 213 (1932). The effect of the statute is to create a conclusive rule of law that pretermission of a child is accidental, unless the testator devises or bequeaths property to the child or names or refers to the child in the will. *See In re Estate of MacKay*, 121 N.H. 682, 684, 433 A.2d 1289, 1290 (1981); *Royce v. Estate of Denby*, 117 N.H. 893, 896, 379 A.2d 1256, 1258 (1977). The statutory presumption will be upheld even if the

testator's intent is defeated as a result. *In the Matter of Jackson*, 117 N.H. 898, 903, 379 A.2d 832, 835 (1977).

No dispute exists concerning the fact that Sandra Wolfe's name does not appear on the face of the will. Therefore, the respondent and the executor argue that the doctrine of incorporation by reference operates to incorporate into the will the provisions of the revocable, non pour-over, *inter vivos* trust, thereby naming the petitioner in the will. Alternatively, they assert that the petitioner is sufficiently referred to in the will to prevent application of the pretermission statute because the petitioner was not out of the mind of the testator.

■■ To incorporate by reference into a will a document which is not physically a part of the will: (1) the document referred to in the will must exist at the time of the will's execution; (2) the document referred to must be specifically identified in the will so that it is clear to what document the reference is made; and (3) words of intent to incorporate the document must be on the face of the reference. *See Hastings v. Bridge*, 86 N.H. 247, 249, 166 A. 273, 274 (1933); *Hills v. D'Amours*, 95 N.H. 130, 137–38, 59 A.2d 551, 557 (1948); 2 W. BOWE & D. PARKER, PAGE ON THE LAW OF WILLS § 19.30 (3d ed. rev. 1960). Thus, the doctrine of incorporation by reference is most commonly applied when the testator states an intention in the will to incorporate a document into the will for distribution of estate assets pursuant to directions contained in the referenced document.

■ In this instance, the trust document had been in existence for more than four years before the will was made, and the will, in its residuary clause, contained a specific reference to the trust, identifying the date it was drawn and naming the trustee; however, the will did not demonstrate the testator's intent to incorporate the trust into the will. The will bequeathed all the rest and remainder of Guy Came's property *"except* the trust created by [him] on July 21, 1975 with the Merchants National Bank of Manchester as Trustee,"* to Winthrop Wadleigh in trust. (Emphasis supplied.) The testator's specific bequest of the rest and remainder to Wadleigh, except for the trust, was evidence of his intent to exclude the trust, not to incorporate it, since he had already disposed of this property in another way. *See generally Witham v. Witham*, 156 Or. 59, 66 P.2d 2881 (1937).

■■ Moreover, assuming *arguendo* that the bequest did not demonstrate an intention to exclude, the testator's reference to the trust was clearly not sufficient to demonstrate, as the respondent

and the executor assert, an intent to incorporate. When a "will does no more than refer to a . . . document as being in existence, . . . such a statement does not show an intention to incorporate such [document], and accordingly it does not incorporate it." 2 W. BOWE & D. PARKER, *supra* § 19.30, at 113; *see In re Reis' Estate*, 145 N.Y.S.2d 258 (1955); *Bottrell v. Spengler*, 343 Ill. 476, 175 N.E. 781 (1931). Therefore, because an intent to incorporate is not apparent from the face of the reference, neither the trust document, nor the provisions contained therein specifically naming the petitioner, are incorporated into the will, and the petitioner is therefore not named in the will.

■■ The respondent and the executor further argue that the testator sufficiently referenced the petitioner in the will to preclude application of the pretermission statute. This court has addressed the issue of what constitutes a sufficient reference and suggested that a reference to a class described as "children" or "issue," whether or not a bequest is made to them, may be sufficient to prevent the application of the statute. *See In the Matter of Jackson*, 117 N.H. at 900–01, 379 A.2d at 834; *Smith v. Smith*, 72 N.H. 168, 169, 54 A. 1014, 1014 (1903). A reference to the testator's "legal heirs" was held in one case to be as sufficient a reference to the children as a reference to the testator's "daughters and sons" or "my children" would have been. *Smith v. Sheehan*, 67 N.H. 344, 347–48, 39 A. 332, 333 (1892). However, a devise or legacy to a class which *may* include children, such as "heirs-at-law" or "next-of-kin," has been found not to be sufficient to prevent the application of RSA 551:10. *In re Estate of MacKay*, 121 N.H. at 684–85, 433 A.2d at 1291.

■ In this case, the testator's reference was clearly not sufficient as a direct reference, because it did not name the petitioner, or describe her as a member of the class to which she belonged, and because it merely referenced a trust of which the petitioner was one of the beneficiaries. The respondent and executor argue that "[t]he reference to the child need not be direct, . . . it is sufficient if it indirectly refers to the child so as to indicate that the deceased had the child in mind when he made the will." *In re Estate of Osgood*, 122 N.H. 961, 964, 453 A.2d 838, 840 (1982). *Compare Boucher v. Lizotte*, 85 N.H. 514, 161 A. 213 (use of the son's name in referring to his wife was a sufficient reference to the son to disinherit him) *with Gage v. Gage*, 29 N.H. 533 (1854) (naming of one person, however closely related to another, was not a sufficient reference).

In *Osgood*, the petitioner was named in a provision of a will which was subsequently deleted by codicil. This court found a sufficient reference based on the fact that the entire will, including the deleted provision, had to be read in conjunction with the codicil in order to probate the will, thereby demonstrating that the child was not out of the mind of the testatrix. *See Osgood, supra* at 965, 453 A.2d at 840.

The case before us is distinguishable from *Osgood* in that the non pour-over, *inter vivos* trust created by Came had an independent legal significance, separate and apart from the will itself. The trust, as a non pour-over, was not an essential part of the will which had to be read in conjunction with it in order to dispose of the property testate; the trust would stand alone, its income passing to the named beneficiaries without regard to the provisions of the will. *See In re York Estate*, 95 N.H. 435, 437, 65 A.2d 282, 283–84 (1949).

As such, the provisions of the trust were extrinsic evidence which could not be introduced to show the testator's intent in omitting his children. *In the Matter of Jackson*, 117 N.H. at 903, 379 A.2d at 835–36. The respondent and executor will not be allowed to prevent application of the pretermission statute by introducing extrinsic evidence, such as the trust document, in order to show the intent of the testator that the petitioner was not out of the testator's mind, as the court's "task is not to investigate the circumstances to divine the intent of the testator; rather, it is to review the language contained within the four corners of the will for a determination of whether the testator named or referred to the [petitioner]." *In re Estate of MacKay*, 121 N.H. at 684, 433 A.2d at 1290; *see* W. BOWE & D. PARKER § 21.109. Therefore, we conclude that the petitioner was not sufficiently referenced in the will to preclude the application of RSA 551:10.

The testator herein failed to comply with the requirements of RSA 551:10. His failure to name or refer to the petitioner, or provide for her as a devisee or legatee in his will, entitles the petitioner to take a portion of the testator's estate as if the testator had died intestate. *See In the Matter of Jackson*, 117 N.H. at 903, 379 A.2d at 836.

*Reversed.*

JOHNSON, J., dissented; the others concurred.

JOHNSON, J., dissenting: Because Guy C. Came's clear intent is not being carried out by the majority decision, I respectfully dissent.

For over one hundred years the well-settled law in New Hampshire has been that the testator's intent should be the sovereign guide in any decision involving the interpretation of a will and the disposition of a testator's property upon death. *Brown v. Bartlett*, 58 N.H. 511 (1879). Guy C. Came, and his counsel who drafted his will, had the right to rely upon this court's repeated expression that "[t]he interpretation of the will is the ascertainment of the testator's intention; and the question of intention is ordinarily determined as a question of fact, by the natural weight of competent evidence, and not by artificial rules of interpretation." *Id.* at 511.

Common sense and the plain meaning of Guy C. Came's will make it abundantly clear that he had two fundamental goals in mind when he approached his counsel in 1979 to draft his will. First, since he had had two marriages, he wanted to be sure that he fully performed all of the obligations owed his first family pursuant to the divorce decree from his first wife. Second, he desired to make certain that the natural and anticipated objects of his bounty from *both* marriages were treated fairly by the testamentary disposition of his property. Unfortunately, by a strained and mechanistic application of RSA 551:10, the majority denies Mr. Came the right to have his clear intentions carried out; and Came's second family has been grossly shortchanged by this decision.

RSA 551:10 is not a statute designed to create a State-imposed disposition of a testator's property, as is RSA 560:10 which, in effect, imposes upon a spouse the obligation to leave his or her surviving spouse a share of the decedent's estate. The purpose of the pretermitted heir statute is to prevent a *mistake* or *unintended failure* by the testator or testatrix "to remember the natural object of his [or her] bounty." *Boucher v. Lizotte*, 85 N.H. 514, 514–15, 161 A. 213, 213 (1932). Hence, the statute is aimed at preventing negligence by the testator which deprives the natural object of his bounty, in this case, the members of his first family, from consideration when a testator's will is being executed. The statute, however, does not require that a testator's child or grandchild receive a penny of the testator's bounty, but merely requires that there is evidence that the testator considered the child or grandchild while preparing the testamentary disposition.

The unfairness of the majority decision can be seen by the simple fact that Came's daughter by his first marriage, Sandra, will now receive all of the benefits of his *inter vivos* trust, amounting to over $500,000, and that she will receive the entire residue of his estate

as well. Meanwhile, his second wife's child, Charles Stanton and Stanton's spouse, who are certainly the anticipated and probable objects of his bounty and persons he clearly indicated he wanted to benefit by his will, will receive nothing whatsoever. This is a shocking result when viewed from what, to me, was Guy C. Came's clear intent.

The majority places primary emphasis on the fact that Guy C. Came's *inter vivos* trust is not incorporated into his will by reference and that there is no pour-over provision in the will into this trust. This entirely misses the point. RSA 551:10 is *not* a statute mandating a disposition of property, as noted above. Its sole purpose is to require an investigation of whether the testator had the natural objects of his bounty *in his mind* when the will was drawn. *See In the Matter of Jackson*, 117 N.H. 898, 901, 379 A.2d 832, 834 (1977). It makes absolutely no difference, for the purpose of this inquiry, whether the trust is technically incorporated into the will or whether the beneficiaries of the will receive additional assets through a pour-over provision. RSA 551:10 simply mandates that we seek to discover, from the four corners of the will, using common sense, whether Guy C. Came had Sandra in his mind, or put differently, whether Sandra was *out of his mind* when he executed his will. *See In re Estate of Osgood*, 122 N.H. 961, 964, 453 A.2d 838, 840 (1982).

To me, nothing could be clearer than that Sandra was within Came's contemplation when he executed his will.

First, Came makes reference to a trust in which Sandra is the primary beneficiary. Certainly Came could not be a beneficiary of that trust once he had died. Marion G. Came could not be a beneficiary of that trust upon Came's death because Article IV of the trust specifically stated that she was to receive semi-monthly payments, "[w]hile the Donor [Came] and his former wife Marion G. Came, *are both living.*" (Emphasis added.) Ruth E. Came, his second wife, is named as a beneficiary under the trust, but she could not possibly have received anything from the trust when Came drew his will because she had already died, and surely he was aware of that. Hence, the only specific individual actually named in the trust who could be a beneficiary, when Came executed his will, was Sandra. With these facts, to find that Came did not have Sandra *in his mind* when he executed his will defies logic. There is only one logical inference to be drawn: Came was indicating that he had already provided for one of the natural objects of his bounty, Sandra, by virtue of the trust specifically referred to in his will. The fact that others, such as Sandra's issue

or the deserving graduates of Milford Area High School, may have also benefited under the trust does not diminish the key point of inquiry: did Guy C. Came have Sandra Wolfe in mind when he executed his will? The answer must be a resounding "yes". Hence, the required inquiry of RSA 551:10 is satisfied. Sandra was not mistakenly omitted from Came's will.

Second, although the trust had an independent legal significance, separate and apart from the will itself, it was clear that the trust would have had to be examined during the probate proceedings relative to Came's estate. The Came estate could not be properly probated, including the payment of State inheritance and federal estate taxes, without reading that document. When the trust, referred to within the four corners of the will, was read, it would become abundantly clear to anyone that Guy C. Came had the natural object of his bounty, Sandra, in mind when he executed his will.

Finally, in *Jackson*, 117 N.H. at 903, 379 A.2d at 835, we stated:

> "[F]ormal requirements of RSA 551:10 may in some cases operate to defeat a testator's intent . . . . Such a clear legislative directive will be upheld even if the result is to defeat a testator's intent."

The statute, RSA 551:10, has been held to "reverse[ ] the general presumption that a person is deemed to know and approve all dispositions and omissions *in [his or] her will." Royce v. Estate of Denby*, 117 N.H. 893, 896, 379 A.2d 1256, 1258 (1977). (Emphasis added.) However, the statute does *not* purport to reverse the general presumption that a person is deemed to know the contents of his own legal documents. *See Level Export Corp. v. Wolz, Aiken & Co.*, 305 N.Y. 82, 86–87, 111 N.E.2d 218, 220 (1953); 4 S. WILLISTON, WILLISTON ON CONTRACTS § 628 (3rd ed. 1961). Hence, since our inquiry must be aimed at what was in the mind of Guy C. Came when he executed the will, common sense tells us that the general common law rule that a person is presumed to know what is contained in legal documents should prevail when our inquiry is so narrow: whether Guy C. Came had Sandra Wolfe *in his mind* when he executed his will. The language of *Jackson* is a legislatively mandated exception, to be followed only in cases of *wills* where the natural object of the testator's bounty has been omitted.

In this present case, the evidence that Came had Sandra within his contemplation was clearly within the four corners of the will; and we merely have to look at the trust to find what was on Came's mind. The *Jackson* language that RSA 551:10 must be followed "even if the result is to defeat a testator's intent," 117 N.H. at 903,

379 A.2d at 835, should result only in the most egregious case, where nothing but hearsay evidence is available, as in *Jackson,* to provide evidence of what was on the testator's mind. Here we have good solid evidence that Came had Sandra in mind when he executed his will.

I would find that Sandra was not a pretermitted heir under RSA 551:10, and thus, she is not entitled to an intestate share of Came's estate. Hence, I respectfully dissent.