In the Matter of the Arbitration Between LEVEL EXPORT COR-
PORATION, Respondent, and WOLZ, AIKEN & Co., Appellant.

Submitted December 5, 1952; decided February 26, 1953.

*David L. Shandalow* for appellant. I. There is direct and
decisive authority for compelling arbitration where, as here,
an arbitration clause is incorporated by reference. (*Matter of
Hines* [*Ziegfeld*], 222 App. Div. 543; *Beaver Concrete Breaking*

*Co.* v. *Nadal Boxendale Inc.,* 278 App. Div. 929; *Matter of Hatzel & Buehler [Fuller Co.],* 303 N. Y. 836; *Matter of Miller & Sons [United Office & Professional Workers],* 195 Misc. 20; *Metzger* v. *Ætna Ins. Co.,* 227 N. Y. 411; *Amend* v. *Hurley,* 293 N. Y. 587; *Knight* v. *Kitchin,* 237 App. Div. 506; *White* v. *Idsardi,* 253 App. App. Div. 96; *Matter of Levy [Hirsch],* 271 App. Div 431, 296 N. Y. 837; *Jones* v. *Cunard S. S. Co.,* 238 App. Div. 172.) II. The language of the contracts being clear and unambiguous, the injection of the Worth Street Rules was improper and their consideration erroneous. (*Matter of Delaware Co. Elec. Corp.* v. *City of New York,* 278 App. Div. 526; *Gans* v. *Ætna Life. Ins. Co.,* 214 N. Y. 326.) III. Sound public policy requires the direction of arbitration herein. (*Matter of Arthur Philip Export Corp. [Leathertone, Inc.],* 275 App. Div. 102; *Kloberg* v. *Teller,* 103 Misc. 641; *Simons* v. *Fried,* 302 N. Y. 323.) IV. It is the policy of the courts to encourage and uphold arbitrations, as they are an inexpensive, simple and expeditious method of adjusting controversies and tend to prevent litigation. (*Matter of Feuer Transp. [Local No. 445],* 295 N. Y. 87; *Welch* v. *Probst,* 151 App. Div. 147; *Matter of E. A. Laboratories,* 50 N. Y. S. 2d 222; *Fudickar* v. *Guardian Mut. Life Ins. Co.,* 62 N. Y. 392; *Matter of Webster* v. *Van Allen,* 217 App. Div. 219.)

*Charles H. Levitt* for respondent. I. Respondent did not agree to arbitrate. (*Matter of Lehman* v. *Ostrovsky,* 264 N. Y. 130; *Matter of Arthur Philip Export Corp. [Leathertone, Inc.],* 275 App. Div. 102; *Matter of Albrecht Chemical Co. [Anderson Trading Corp.],* 298 N. Y. 437; *Matter of Eagar Constr. Corp. [Ward Foundation Corp.],* 255 App. Div. 291; *Matter of General Silk Importing Co. [Gerseta Corp.],* 198 App. Div. 16; *Matter of Bachmann, Emmerich & Co. [Wenger & Co.],* 204 App. Div. 282; *Matter of Gold [A. Broido, Inc.],* 185 Misc. 1039.) II. Appellant's cases do not support its position that respondent is required to arbitrate.

LEWIS, J. Incidental to a commercial transaction between the parties to this proceeding, there has emerged the question, now decisive in this litigation, whether each of the two contracts, which fixed the obligations of the parties, validly incorporated an agreement that " Any controversy arising under, or in relation to, this contract, shall be settled by arbitration."

As to facts: The petitioner-respondent, Level Export Corporation, to which reference will be made as the buyer, is engaged in the purchase and export of a variety of commodities including textiles. On January 22 and February 14, 1951, the buyer executed two written contracts, practically identical in text, by which it agreed to purchase from the respondent-appellant, Wolz, Aiken & Co., hereinafter referred to as the seller, a total quantity of 135,000 yards of leno — a light-weight cotton fabric used in making summer garments. Each of the two agreements contained the names of the parties, the quantity of fabric sold, the delivery dates and the terms of payment. The balance of each contract — covering a substantial portion of the single page upon which the agreement was printed — consists of the following two paragraphs:

" This Salesnote is subject to the provisions of STANDARD COTTON TEXTILE SALESNOTE which, by this reference, *is incorporated as a part of this agreement and together herewith constitutes the entire contract between buyer and seller. No variation therefrom shall be valid unless accepted in writing.*

" Prices on any undelivered portion of this contract are subject to any further increase or decrease due to Governmental action and any present or future Federal or State legislation affecting the seller's costs, and deliveries may be modified to the extent necessitated by any such Governmental action or legislation affecting production." (Emphasis supplied.)

The standard cotton textile salesnote which — by the words italicized above — is incorporated by reference in each of the two agreements here involved, contains ten subdivisions which, by their titles, relate to — " I. CONSTRUCTION ", " II. PASSING OF TITLE ", " III. STORAGE AND INSURANCE ", " IV. TERMS OF COLLECTION AND CREDIT ", " V. CANCELLATIONS, REJECTIONS AND CLAIMS ", " VI. DEFAULTS IN PAYMENT ", " VII. FURNISHING SPECIFICATIONS ", " VIII. CASUALTY ", " IX. OTHER CONTINGENCIES ", and " X. ARBITRATION ". The tenth subdivision, relating to " ARBITRATION ", provides as follows: " Any controversy arising under, or in relation to, this contract, shall be settled by arbitration. If the parties are unable to agree respecting time, place, method, or rules of the arbitration, then such arbitration shall be held in the City of New York in

accordance with the laws of the State of New York and the rules then obtaining of the General Arbitration Council of the Textile Industry and the parties consent to the jurisdiction of the Supreme Court of said State and further consent that any process or notice of motion or other application to the Court or a Judge thereof may be served outside the State of New York by registered mail or by personal service, provided a reasonable time for appearance is allowed.''

When a dispute subsequently arose between the parties with regard to performance under the two purchase agreements, the seller instituted arbitration proceedings in accord with the rules of the General Arbitration Council of the Textile Industry. Thereupon the buyer, when requested to do so, refused to appoint an arbitrator and has thus far successfully opposed arbitration by motion for a stay made at Special Term upon the ground that no agreement to arbitrate exists between the parties (Civ. Prac. Act, § 1458, subd. 2).

The buyer admits that it executed the contracts of purchase mentioned above, each of which by its terms incorporates the standard cotton textile salesnote containing the provision upon which is based the seller's demand for arbitration. The ground upon which the buyer resists arbitration, viz., that no arbitration agreement exists between the parties, is stated in the affidavit by the buyer's secretary and treasurer, read in support of its motion in this proceeding, as follows:

'' At no time was the petitioner informed in any way that the provisions of the Standard Cotton Textile Salesnote contained any provision requiring arbitration of any controversy between the parties.

'' Neither the petitioner nor any of its officers or directors is a member of any association or any textile group; none of us has ever seen the Worth Street Rules; we have never been provided with a copy thereof. Arbitration was mentioned for the first time by the attorneys for the respondent on September 14, 1951, which was several months after the controversy arose. At the time that the petitioner signed the contracts * * * neither the petitioner nor any of its officers or directors was aware of any provision requiring arbitration under the contracts. * * *

" The petitioner [buyer] did not know, if it is the fact, that by signing the agreements annexed hereto that it had agreed to arbitrate any disputes with respondent. No arbitration clause was ever called to the attention of the petitioner."

The question thus presented is whether the factual allegations contained in the buyer's affidavit, quoted in part above, serve to raise " * * * a substantial issue as to the making of the contract ", thereby entitling the buyer to a stay of arbitration. (Civ. Prac. Act, § 1458, subd. 2.) That question is one of law. (*Matter of General Elec. Co.* [*United Elec. Radio & Mach. Workers of America*], 300 N. Y. 262, 264; *Alpert* v. *Admiration Knitwear Co.*, 304 N. Y. 1, 3.)

Mindful that " No one is under a duty to resort to arbitration unless by clear language he has so agreed " (*Matter of Lehman* v. *Ostrovsky*, 264 N. Y. 130, 132), we are unable to find in the record legal justification for the buyer's present claim that it is not obligated, by each of the purchase agreements to which it was a party, to arbitrate the disputes which have arisen in the course of performance of those agreements. Each of those contracts contains the statement that it is made " subject to the provisions of STANDARD COTTON TEXTILE SALESNOTE " which, as we have seen, was expressly " * * * incorporated as a part of this agreement and together herewith constitutes the entire contract between buyer and seller." Difficult it would be to find words more clearly to express the contractual intent of the parties. There is no evidence that an attempt was made to limit the application of the standard cotton textile salesnote; nor was there indication that any one of the ten subdivisions of the salesnote was not intended to apply. Indeed, a contrary intention is indicated by the sentence which immediately follows the contract provision last quoted above " No variation therefrom shall be valid unless accepted in writing."

The effect of the foregoing contract provisions was to adopt, and to integrate into each purchase agreement, the terms of the standard cotton textile salesnote. Among those provisions is the tenth subdivision, bearing the caption " ARBITRATION ", beneath which is the printed statement " Any controversy arising under, or in relation to, this contract, shall be settled by arbitration ", followed by procedural provisions in the event arbitration should become necessary.

In view of the documents to which reference has been made — which, when integrated, form the contracts executed by buyer and seller (see 3 Williston on Contracts [Rev. ed.], § 628) we regard the buyer's contention — that no contract to arbitrate exists between the parties — as being at variance with the plain language of its agreements.

There is no allegation by the buyer of misrepresentation by the seller either with respect to the effect of the two purchase agreements, or with respect to provisions of the standard cotton textile salesnote. Nor does the buyer claim to have been innocently misled by words or conduct of the seller which indicated that disputes between the contracting parties would be settled by means other than by arbitration. The buyer's sole contention is that through its own ignorance of the provisions contained in the standard cotton textile salesnote it failed to understand the significance and effect of those provisions of the purchase contracts to which reference has been made. Upon that phase of the case we note in the record a statement by an officer of the buyer that the business of that corporation " * * * consists of the purchase of commodities and their export to customers throughout the world " and that the commodities purchased and exported comprise a wide variety of items including textiles. In those circumstances we may assume that the buyer — an exporter of wide experience — dealt with the seller with knowledge that the provisions of the purchase agreements here involved were to have legal effect and were thus enforcible.

In *Metzger* v. *Ætna Ins. Co.*, 227 N. Y. 411, 416, this court had occasion to state the rule which we believe to be applicable to the present case: " * * * when a party to a written contract accepts it as a contract he is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations. He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them and there can be no evidence for the jury as to his understanding of its terms." (See, also, *Pimpinello* v. *Swift & Co.*,

253 N. Y. 159, 162–163; *Amend* v. *Hurley*, 293 N. Y. 587, 595; *Matter of Levy* [*Hirsch*], 271 App. Div. 431, 433, affd. 296 N. Y. 837.)

We regard as inapplicable to our present problem the decisions in *Matter of General Silk Importing Co.* (*Gerseta Corp.*), 198 App. Div. 16, and *Matter of Bachmann, Emmerich & Co.* (*Wenger & Co.*), 204 App. Div. 282, cited by the Appellate Division in support of its ruling herein. In each of those cases the contract under which arbitration was sought provided that " ' Sales are governed by raw silk rules adopted by the Silk Association of America.' " In refusing to direct arbitration, the court, in *Matter of General Silk Importing Co.* (*Gerseta Corp.*) indicated that the parties had not clearly expressed an intention that the raw silk rules should apply to anything more than to the completion of sales under the agreement. In *Matter of Bachmann, Emmerich & Co.* (*Wenger & Co.*) involving the identical contract provision, the case was decided upon the authority of *Matter of General Silk Importing Co.* (*Gerseta Corp.*).

Our examination of the present record leads us to conclude that it does not raise a " substantial issue " as to the making of the two purchase agreements in suit so as to avoid their legal consequences (Civ. Prac. Act, § 1458, subd. 2).

Accordingly, the orders should be reversed and the matter remitted to Special Term for further proceedings not inconsistent with this opinion, with costs to appellant in all courts.

DESMOND, J. (dissenting). I dissent and vote to affirm.

Whether respondent ever consented to arbitration was, on this record, a question of fact, and the negative answer to that question given by both courts below, leaves us powerless to reconsider it. No one can be forced into arbitration unless by plain language he actually agrees to arbitrate (*Matter of Lehman* v. *Ostrovsky*, 264 N. Y. 130, 132), and such an agreement is not established, conclusively and as matter of law, by a showing that he signed a contract which incorporated by reference only and with no mention of arbitration, another document which, although he did not know it, contained a consent to arbitration. Decisions in cases where a party signed a contract without reading it, are not helpful here. Respondent, so it has

been found as fact by both courts below, never saw the document "incorporated by reference" into the contract he did see and sign, never knew that appellant desired an agreement on arbitration, and never in fact knew that the other, or "incorporated", document prescribed arbitration. In legal effect, the situation is identical with that in the two cases cited by the Appellate Division (*Matter of General Silk Importing Co.* [*Gerseta Corp.*], 198 App. Div. 16, and *Matter of Bachmann, Emmerich & Co.* [*Wenger & Co.*], 204 App. Div. 282) where the arbitration provision was in the rules of the Silk Association, by which rules the sales involved in the two cited cases were "governed".

LOUGHRAN, Ch. J., CONWAY, DYE and FROESSEL, JJ., concur with LEWIS, J.; DESMOND, J., dissents in opinion in which FULD, J., concurs.

Orders reversed, etc.