In the Matter of the Arbitration between RIVERDALE FABRICS CORP., Appellant, and TILLINGHAST-STILES COMPANY, Respondent.

Argued November 17, 1953; decided February 25, 1954.

*Francis J. Duffy* and *Hyman A. Hochman* for appellant. I. An agreement to arbitrate must be clearly manifested in order to take away from a party his constitutional right to have his controversy determined by the courts. (*Matter of Lehman* v. *Ostrovsky,* 264 N. Y. 130; *Matter of Philip Export Corp. [Leathertone, Inc.],* 275 App. Div. 102; *Matter of General Silk Importing Co. [Gerseta Corp.],* 200 App. Div. 786, 234 N. Y.

513; *Western Assur. Co.* v. *Decker,* 98 F. 381.) II. In the instant case there was no agreement in writing to arbitrate, as required by statute. There was absolutely no meeting of the minds on this question. (*Matter of General Silk Importing Co.* [*Gerseta Corp.*], 198 App. Div. 16; *Matter of Level Export Corp.* [*Wolz, Aiken & Co.*], 305 N. Y. 82.)

*Melvin Liebowitz, Reuben Golin* and *Arthur A. Litt* for respondent. Riverdale is bound by its contract with Tillinghast to arbitrate controversies arising thereunder. (*Matter of Level Export Corp.* [*Wolz, Aiken & Co.*], 305 N. Y. 82; *Metzger* v. *Aetna Ins. Co.,* 227 N. Y. 411; *Matter of General Silk Importing Co.* [*Gerseta Corp.*], 198 App. Div. 16; *Matter of Bachmann, Emmerich & Co.* [*Wenger & Co.*], 204 App. Div. 282.)

VAN VOORHIS, J. The question is whether the contract entered into between these parties contains an arbitration clause, precluding resort to actions at law or in equity. Westchester County Special Term denied a stay of arbitration. This order was reversed by the Appellate Division, Second Department, which unanimously granted the application for a stay (281 App. Div. 831), in reliance on *Matter of Level Export Corp.* (*Wolz, Aiken & Co.*) (280 App. Div. 211), but following reversal of the *Level* case in the Court of Appeals (305 N. Y. 82), a reargument was granted. Upon reargument, the Special Term order was affirmed by a divided court, which allowed the controversy to proceed to arbitration. (281 App. Div. 983.)

There is a substantial distinction between this contract and the one which was involved in the *Level* case. The rule is that a party is not to be compelled to surrender his right to resort to the courts, with all of their safeguards, unless he has agreed in writing to do so (*Matter of Philip Export Corp.* [*Leathertone, Inc.*], 275 App. Div. 102, 104), and by clear language (*Matter of Lehman* v. *Ostrovsky,* 264 N. Y. 130, 132). Although one may by contract bargain away his right to resort to the courts in matters which might be the subject of a civil action (Civ. Prac. Act, § 1448), " the agreement to do so will not be extended by construction or implication " (*Western Assur. Co.* v. *Decker,* 98 F. 381, 382).

This controversy turns on a sales memorandum of yarn, which contained a printed sentence: " This contract is also subject to the Cotton Yarn Rules of 1938 as amended ". This language evidently referred to regulatory rules adopted by certain well-known trade associations of cotton yarn dealers in the United States. This contract contains no arbitration clause, nor does it mention the settlement of disputes by arbitration. The clause in question is similar to the one in the contract involved in *Matter of General Silk Importing Co. (Gerseta Corp.)* (198 App. Div. 16) wherein the following statement was made in the sales memoranda: " Sales are governed by Raw Silk Rules adopted by the Silk Association of America." The raw silk rules, to which reference was made, contained exclusive arbitration articles and many other detailed provisions concerning the sale of such merchandise. The court held that this language failed to show with sufficient definiteness that the minds of the parties met on arbitration, or that they intended to adopt the rules of the Silk Association of America " not merely to insure performance of the contract in accordance with those rules, but that in the event of a controversy, it should be arbitrated in accordance therewith." (Pp. 20–21.) The court said further: " The parties could have provided for such arbitration without setting forth all or any of the rules of the Silk Association of America if they had merely added to the provision incorporated in the contract to the effect that the *sales* are to be governed by those rules a provision that in the event of a controversy between the parties it should be arbitrated as provided by the rules, or if the contract had provided in any manner by appropriate phraseology that the reference to the rules was intended to include those providing for arbitration." (P. 21. Italics from original.) The Special Term order denying application to compel arbitration in the raw silk case was affirmed (198 App. Div. 16), but it contained leave to renew. On renewal, and on a full record showing that the rules provided that " All differences arising between buyer and seller must be submitted to the Arbitration Committee of the Silk Association of America " and that both parties were members of the Association, the petition to compel arbitration was again denied at Special Term, and its order was unanimously affirmed by the

Appellate Division (200 App. Div. 786) and by the Court of Appeals (234 N. Y. 513).

That case is in point here. It was distinguished in the opinion in the *Level* case, by stating that the phraseology in the sales note in the *General Silk Importing Co.* case " indicated that the parties had not clearly expressed an intention that the raw silk rules should apply to anything more than the completion of sales under the agreement." (305 N. Y. 88.) The *Level* contracts were in the form of salesnotes, each of which contained a clause reading: " This Salesnote is subject to the provisions of Standard Cotton Textile Salesnote which, by this reference, is incorporated as a part of this agreement and together herewith constitutes the entire contract between buyer and seller." The standard cotton textile salesnote was thus incorporated verbatim by reference, which contained an exclusive arbitration clause. The *Level* opinion pointed up this distinction by stating further at page 86: " The effect of the foregoing contract provisions was to adopt, and to integrate into each purchase agreement, the terms of the standard cotton textile salesnote."

The present contract contains no " incorporation " clause, and is almost identical with the language of the memorandum in *Matter of General Silk Importing Co. (Gerseta Corp.)*, which was distinguished in the *Level* case. Paraphrasing what was there said of the Silk Association contract, these parties are not deemed necessarily to have contemplated anything more than that the cotton yarn rules should apply to the completion of sales under the agreement.

The intent must be clear to render arbitration the exclusive remedy; parties are not to be led into arbitration unwittingly through subtlety. The intention to do that is reasonably clear from the draftsmanship of the cotton yarn rules, which aimed to avoid mentioning arbitration in the sales memoranda themselves, where the contracting parties could see it. This could have been done briefly, since no set form of words is required if the intent to arbitrate is made clear. Nevertheless, these rules were elaborately drafted so as to state that a clause contained in a sales memorandum which says " ' This Contract is subject to the provisions of the Cotton Yarn Rules,' " means that " such

rules become a part of the contract '', and that '' By this reference the ' Cotton Yarn Rules ' are incorporated as a part of an agreement and altogether therewith constitutes the entire contract between buyer and seller. No variation therefrom shall be valid unless accepted in writing.'' Rule 31 contains an elaborate exclusive arbitration clause. All of this awaited the unwary trader if he assented to the clause that the contract would be subject to the Cotton Yarn Rules.

If this clause, or a much simpler one, had been set forth in the memorandum of sale, unquestionably arbitration would have been the exclusive remedy. If part of the care exhibited in drafting the rules had been used in mentioning arbitration in the contract, there would be no difficulty in affirming the order appealed from. Instead, the form of words favored by these trade associations appears to have been designed to avoid any resistance that might arise if arbitration were brought to the attention of the contracting parties as the exclusive remedy in case of disputes.

The order of the Appellate Division and that of Special Term should be reversed, and appellant's motion to stay arbitration granted, with costs in all courts.

DESMOND, J. (dissenting). My dissent is not prompted by any dissatisfaction with the result arrived at here — I unsuccessfully urged a similar result, from construction of similar language, in my dissent, a year ago, in the *Matter of Level Export Corp. (Wolz, Aiken & Co.)* case (305 N. Y. 82). What troubles me about this present decision is that this court, without any reargument or overruling of that very recent *Level* case ruling, now puts the opposite construction on language, in the contract between these parties, which has the same meaning as the language in the salesnote in the *Level* case. What is now the law as to whether a businessman can make his agreement subject to arbitration by general references therein to trade association rules which, in fact, make all disputes arbitrable?

We now have three decisions of this court on the subject: *Matter of General Silk Importing Co. (Gerseta Corp.)* (234 N. Y. 513), *Matter of Level Export Corp. (Wolz, Aiken & Co.)* (305 N. Y. 82, *supra*), and this case. The *Gerseta* contract said: '' Sales are governed by Raw Silk Rules adopted by the Silk

Association of America'' and these '' Raw Silk Rules '' made arbitration compulsory, but the courts said that this reference to the rules did not bind to arbitration. In the *Level* case, more words were used, but to the very same effect: '' This Salesnote is subject to the provisions of STANDARD COTTON TEXTILE SALESNOTE which, by this reference, is incorporated as a part of this agreement and together herewith constitutes the entire contract between buyer and seller.'' The '' STANDARD COTTON TEXTILE SALESNOTE '' provided, in one of its terms, for arbitration of disputes. Although that *Level* salesnote did not mention arbitration, any more than did the contract in *Gerseta,* this court held that the parties had agreed to arbitration, and must arbitrate. Now, in the present case, we have this form of reference to outside rules which require arbitration: '' This contract is also subject to the Cotton Yarn Rules of 1938 as amended ''.

In none of the three contracts (*Gerseta, Level* and the one here) was there any actual mention of arbitration, but each contract was in terms made subject to an outside, unattached document which, on inspection, would have been found to contain a conventional arbitration clause. In each instance, by variant phraseology, the contracting party was warned that the transaction expressed in the contract was subject to certain identified but not otherwise described rules.

The *Level* case salesnote failed, just as did the contract here, to include '' clear language '' (*Matter of Lehman* v. *Ostrovsky,* 264 N. Y. 130) binding the parties to arbitrate. The words used in one instance were no more or less subtle, artful or devious than in the other. If one set of words was a trap for the unwary or if, on the contrary, it was a fair warning to look at the rules, then, whichever of those two views we take, we should take the same as to the same-meaning words in the other instance. In short, we should either overrule the *Level* case, or follow it.

The order should be affirmed, with costs.

FROESSEL, J. (dissenting). I concur with Judge DESMOND for affirmance. In *Matter of General Silk Importing Co. (Gerseta Corp.)* (234 N. Y. 513) decided in 1922, the crucial provision read: '' *Sales* are governed by Raw Silk Rules adopted by the Silk Association of America.'' (Emphasis supplied.) In *Matter of Level Export Corp. (Wolz, Aiken & Co.)* (305 N. Y.

82) where the " Salesnote " was made " subject to the provisions of STANDARD COTTON TEXTILE SALESNOTE ", we pointed out (p. 88) that the court in the *Gerseta* case " indicated that the parties had not clearly expressed an intention that the raw silk rules should apply to anything more than to the completion of *sales* under the agreement " (emphasis supplied). Here, the reference is not to " sales " but to " This contract ", a far broader term, which in my opinion brings it within the holding of the *Level* case.

LEWIS, Ch. J., CONWAY and FULD, JJ., concur with VAN VOORHIS, J.; DESMOND, J., dissents and votes for affirmance in an opinion in which DYE, J., concurs; FROESSEL, J., dissents and votes for affirmance in a separate memorandum.

Orders reversed, etc.   [See 307 N. Y. 689.]