375 F.2d 977
 BEACON CONSTRUCTION COMPANY OF MASSACHUSETTS, Inc., et al.,
Defendants, Appellants,
v.
PREPAKT CONCRETE COMPANY et al., Appellees.
PREPAKT CONCRETE COMPANY, Plaintiff, Appellant,
v.
BEACON CONSTRUCTION COMPANY OF MASSACHUSETTS, Inc., et al.,
Defendants, Appellees.
 Nos. 6815, 6817.
 United States Court of Appeals First Circuit.
 April 12, 1967.
 
 Robert J. Sherer, Boston, Mass., with whom Joseph T. Wynne, San Juan, P.R., Roche & Leen, Boston, Mass., and McConnell, Valdes & Kelley, San Juan, P.R., were on brief, for Beacon Construction Co. of Massachusetts, Inc., and others.
 Leslie A. Hynes, New York City, with whom Jorge Souss, San Juan, P.R., was on brief, for Prepakt Concrete Co.
 Luis E. Dubon, Jr., with whom Dubon & Dubon, Santurce, P.R., was on brief, for Augusto Menendez Construction
 Corp. and others, appellees.
 Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.
 COFFIN, Circuit Judge.
 
 
 1
 These appeals arise from a diversity action brought by a subcontractor (Prepakt) which performed piling work in connection with the construction of a United States postal facility at San Juan, Puerto Rico, against the original general contractor (Beacon) and its assignee (Ameco) to recover the contract price and the value of additional work requested. /1/ Beacon moved that the proceedings be stayed pending either (a) pursuit of an administrative remedy under a Post Office disputes clause allegedly incorporated by reference in the subcontract or (b) arbitration under a contract of assignment between Beacon and Ameco, by which Prepakt was allegedly bound. The district court granted the motion, finding that the arbitration clause was binding and that it was not necessary to consider whether the disputes clause procedure was applicable. Prepakt and Beacon both appealed, the latter assigning error in the court's refusal to rule on the applicability of the disputes clause.
 
 THE ARBITRATION CLAUSE
 
 2
 The subcontract between Beacon and Prepakt was executed on July 6, 1964. It contained no reference to arbitration as a procedure to resolve disputes. Attached to and part of this contract were fifteen paragraphs of 'terms and conditions'. Paragraph 14 stated:
 
 
 3
 '14. It is contemplated that the Contractor may desire to assign its rights and delegate its obligations under the subcontract to another general contractor. If such assignment is made, the assignee will stand in the position of the Contractor under this subcontract and the Sub-Contractor will assume toward such assignee, all the obligations which it has by this subcontract, assumed toward the Contractor and will look solely to the assignee for payment. In the event of such an assignment, the general contract to be entered into between the Contractor and the assignee shall be treated as the general contract referred to in this subcontract.'
 
 
 4
 On August 20, 1964, Beacon and Ameco entered into their contract, under which Ameco took on the obligation of prime contractor for the Post Office facility. Appendix A of this contract contained an arbitration clause providing, in pertinent part:
 
 
 5
 'I.-- Excepting those which are controlled by the Dispute Sections or other applicable sections of the Post Office Department and General Conditions, as aforesaid, all disputes, claims or questions subject to arbitration under the contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of The American Institute of Architects * * *. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right of legal action that either party may have against the other * * *.'
 
 
 6
 The district judge placed dominant emphasis on the closing sentence of paragraph 14 of the subcontract: 'In the event of * * * an assignment, the general contract to be entered into between the Contractor and the assignee shall be treated as the general contract referred to in this subcontract.' Reasoning from 'the clear import' of this language that Prepakt intended to be bound by a later contract, the notice of the Ameco contract which was given Prepakt, and the likelihood that Prepakt could have obtained a copy had it asked, the court concluded that Prepakt should not be allowed to benefit from its own failure to act diligently. It held that the arbitration clause in the Ameco contract was incorporated by reference in the subcontract and was binding on Prepakt.
 
 
 7
 We are forced to a different conclusion. Paragraph 14 put Prepakt on notice only that Beacon might assign its rights to another general contractor. It did not intimate that those rights might be enlarged. Rather, it assured Prepakt that any assignee would stand in Beacon's shoes and that Prepakt would only 'assume toward such assignee, all of the obligations which it has, by this subcontract, assumed toward the Contractor'. Were we to say that the concluding sentence, treating the new contract with an assignee as the general contract, committed Prepakt to a series of additional obligations, we would be reading into oblivion the rest of the paragraph. We grant that Prepakt's fears that price or character of work might be altered by Ameco are extreme, but we cannot say that a provision requiring arbitration with an unknown party, as a precondition to suit, is so inconsequential a change in obligation as to be ignored. When we search the briefs for a reason why Prepakt should be bound by this additional requirement, we read only that 'mutual confidence of the parties in each other * * * warrants the mandatory conclusion that Prepakt expected to assume * * * other obligations' and that 'Prepakt can hardly be heard to argue that it could not reasonably have expected to undertake additional liabilities'. But saying so does not make it so.
 
 
 8
 Even were we to hold the Beacon-Ameco arbitration provision applicable to Prepakt, we should find ourselves in a dead end street. For the provision, after excepting matters controlled by the disputes clause procedure, defines what shall be subject to arbitration as 'all disputes, claims or questions subject to arbitration under the Contract'. Unfortunately the contract is silent as to what matters shall be subject to arbitration. While we might try to construe such a clause sympathetically, were we dealing with two signatories, we feel no such mandate in this case.
 
 THE DISPUTES CLAUSE
 
 9
 The district court having ordered a stay on the erroneous ground that the arbitration clause in the Ameco contract governed, it could be argued that we should simply remand for consideration of the applicability of the disputes clause. This would be a disservice to both district court and counsel. The issue has been fully briefed and argued. We conclude that this clause is not applicable to Prepakt.
 
 
 10
 The basis for arguing that Prepakt agreed to submit itself to the administrative disputes procedures established by the Post Office Department is that (a) it agreed to do its work 'in accordance with said general contract, and all documents, plans, specifications and addenda * * * including Advertisement for Bids; Agreement to Lease * * *; Post Office Department General Conditions * * * everyone of the aforesaid being a part hereof as fully as if reproduced herein'; and that (b) it agreed 'to assume to said Contractor (Beacon) all the obligations and responsibilities that said Contractor, by said general contract and other instruments, has assumed to the Owner (the United States).'[2]
 
 
 11
 The Post Office Department General Conditions comprised forty-four detailed provisions, taking up thirty-eight typed pages, many of which are obviously irrelevant to relations between Beacon and Prepakt. Condition number eleven was the disputes clause, reproduced in the margin.[3] Despite this prepossessing bulk of rather dreary reading material, Prepakt can hardly claim that the conditions were foisted upon it unawares. The incorporating description in the subcontract is specific; and it would be a naive subcontractor indeed who would be surprised to find a disputes clause in a government construction contract. This is not a case like Matter of Riverdale Fabrics Corp., 1954, 306 N.Y. 288, 118 N.E.2d 104, 41 A.L.R.2d 867, where, by simple reference to 'The Cotton Yarn Rules of 1938 as amended', sales contracts were sought to be subjected to, among over thirty rules, an elaborate exclusive arbitration clause. Here, such conditions as are otherwise applicable surely bind Prepakt. Our problem is not with notice but with applicability-- with mechanics and logic.
 
 
 12
 Prepakt had notice that Beacon had agreed to submit all issues of fact to the Contracting Officer, and to pursue appeals through the Postmaster General, seeking remedy from the courts only in case of fraud, caprice, arbitrariness, bad faith, failure of substantial evidence, or a question of law. Prepakt had also agreed to be bound to Beacon as Beacon had agreed to be bound to the United States. The difficulty lies in the fact that Beacon, and only Beacon, has the right to submit factual issues to the Contracting Officer. As the Tenth Circuit pointed out in Fanderlik-Locke Co. v. United States, 10 Cir., 1960, 285 F.2d 939, 942, cert. denied, 1961, 365 U.S. 860, 81 S.Ct. 826, 5 L.Ed.2d 823, 'There is no procedure by which the claim of a subcontractor can be presented against the United States except as it may become a claim of the prime contractor, since there is no contract, express or implied, between the subcontractor and the government. United States v. Blair, (1944) 321 U.S. 730, 737 (64 S.Ct. 820, 88 L.Ed. 1039).'[4] Accord, Central Steel Erection Co. v. Will, 9 Cir., 1962, 304 F.2d 548, 551.[5]
 
 
 13
 Beacon, in its contract with Ameco, remedied this deficiency. Not only was there a specific provision in the contract that 'Any disputes * * * shall be processed in accordance with the provisions of Clause 11, the Disputes Clause, of Post Office Department General Conditions', but Beacon agreed 'to allow (Ameco) * * * to prosecute in the name of (Beacon) * * * any claims arising out of any dispute * * * and (Beacon) shall cooperate in the prosecution of any such claim.'
 
 
 14
 But no similar provision appears in the subcontract, and we cannot supply the defect by implication. For the requirement of privity is not merely technical, but reflects the purpose of the disputes clause. The Contracting Officer does not agree to act as general arbiter for the project; rather, his decision on disputes is made authoritative for the benefit of the government, to provide for efficient settlement of matters affecting the government's liability under the general contract. And, at least under the usual form of general contract, that liability is only to the general contractor, not to the subcontractors. Of course, some disputes between the general and subcontractor may involve issues that ultimately affect the government's liability. If so, the issue can as well become a dispute between the general contractor and the government and might appropriately be submitted to the Contracting Officer. Indeed, the general contractor may wish to have such disputes decided in a single proceeding, to avoid the possibility of being found liable both to the government under the disputes clause and to the subcontractor in a legal action, because of contrary findings on the same issue. That interest may readily be protected by a proper clause in the subcontract expressly making the disputes clause procedure applicable. See also Blount Bros. Const. Co. v. United States, Ct.Cl., 1965, 348 F.2d 471. On the other hand, the general may wish to avoid the burden of pressing claims on behalf of the sub, and may choose to assume the business risk imposed by divergent remedies. Cf. United States ex rel. The B's Co. v. Cleveland Elec. Co., 4 Cir., 373 F.2d 585, February 6, 1967. In any event, many disputes between the general and the sub will be of no ultimate concern to the government. See, e.g., Wymard v. McCloskey & Co., E.D.Pa., 1960, 190 F.Supp. 420, aff'd, 3 Cir., 1961, 292 F.2d 839. The requirement of privity is a rational rule for distinguishing the types of disputes.
 
 
 15
 In this case, Prepakt is claiming (a) the contract price of $237,000 less credit for underruns in quantities and (b) the reasonable value ($168,381) of additional work of testing and installing pilings, necessitated, it says, either by excessive engineering requirements, by defective excavation work, or by incorrect instructions as to installing piling on the part of Ameco. On the other hand, we are told in Prepakt's brief that Ameco has sent an invoice to Prepakt for back charges claims in the amount of $602,169.07; and, by the answer of one of the surety defendants, that Prepakt's work did not meet specifications. All of this, with one exception to be noted, indicates differences solely between Prepakt and Beacon. The government could not be interested in whether Prepakt's costs ballooned because of improper supervision by Ameco or, alternatively, in whether Prepakt's defective workmanship occasioned the added costs required to meet the specifications.
 
 
 16
 The only area of interest to the government is the credit to be allowed for underruns. On July 6, 1964, Enclosure C of the subcontract provided that while Beacon would attempt to negotiate unit prices for piling and tests to be applied both in case of addition and in case of deduction (or underrun), Prepakt would be bound by whatever prices Beacon and and the Post Office Department would establish. On August 12, 1964, the subcontract was amended by letter to provide that Beacon would not agree to unit prices above or below certain fixed limits.
 
 
 17
 Here, then, is 'the exception that proves the rule' that matters concerning the interrelationships of general and subcontractors are of no concern to the government. The unit price to be paid for overrun or credited for underrun was an important part of Prepakt's rights and obligations. Prepakt obviously chose finally not to be bound by any agreement Beacon and the Contracting Officer might achieve. Instead, it set outer limits which Beacon agreed to follow both in negotiation with the Contracting Officer, and, negotiation failing, in pursuing available disputes clause procedure. In other words, for this limited purpose of completing the contractual framework, Beacon adopted Prepakt's position. There was no possibility of a clash of interests between them. Beacon obviously did not agree similarly to submit any and all claims Prepakt might raise in the future.
 
 
 18
 If the unit price for underrun has been settled, it must be applied to whatever quantities of underrun are established. If it has not, any judgment on the merits of this controversy must make reference to such price when finally determined. In either event, the precise procedure adopted by the parties for settling this minor issue is no barrier to adjudication by the court of all other issues.
 
 
 19
 Reversed and remanded for further proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Several other defendants, whose rights and liabilities are purely derivative, are omitted from this statement of the facts
 
 
 [2]
 The subcontract is a printed form with typewritten insertions. One such insertion changes the clause 'The said Contractor is named in a general contract with * * *' to 'The said Contractor As Owner * * *', reflecting the fact that the government was to be the lessee of the completed facility. But the clause quoted above was wholly printed, and in the context 'Owner' clearly means the United States
 
 
 [3]
 '(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Lessor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Lessor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Postmaster General. The decision of the Postmaster General or his duly authorized representative for the determination of such appeals shall be final and conclusive. This provision shall not be pleaded in any suit involving a question of fact arising under this contract as limiting judicial review of any such decision to cases where fraud by such official or his representative or board is alleged: PROVIDED, HOWEVER, that any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith or is not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Lessor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, the Lessor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision
 '(b) This Disputes clause does not preclude consideration of questions of law in connection with decisions provided for in paragraph (a) above. Nothing in this contract, however, shall be construed as making final the decision of any administrative official, representative, or board on a question of law.'
 
 
 [4]
 Indeed, Fanderlik presented a stronger case for requiring adherence to the disputes clause procedure since, as the dissenting opinion pointed out, the contractor bound itself to the subcontractor 'by all the provisions * * * affording remedies and redress to the Contractor from the Owner.' In other words, the contractor said, arguably, that it would lend its name to any effort by the subcontractor to seek a remedy from the Contracting Officer
 
 
 [5]
 We do not read United States v. Bruce Constr. Corp., 5 Cir., 1959, 272 F.2d 62, as holding contrary views. In that case the subcontractor argued that the general contractor was bound to it by notice provisions in a guaranty clause of the prime contract, and the court observed that acceptance of that theory committed the subcontractor to the finality of the Contracting Officer's decision under a later provision (similar to the disputes clause) of the same guaranty clause. Since arbitration was not in issue, the opinion reflects no decision on the problems of privity or jurisdiction of the Contracting Officer