## THE ROOSTERTAIL, INC. v. PATTI PAGE

1. MOTIONS—SUMMARY JUDGMENT—MATERIAL ISSUE OF FACT.

    Summary judgment should not have been granted in an action seeking a declaratory judgment that the plaintiff was not bound by the result of arbitration proceedings instituted by the defendants where the facts were not sufficiently developed to permit resolution of the intricate legal issues presented.

2. ARBITRATION—AGREEMENT TO ARBITRATE—INTENT.

    The parties to a contract must manifest a clear and direct intention to arbitrate disputes arising under the contract in order to be bound by an arbitration clause in a contract subject to New York law.

3. ARBITRATION—AGREEMENT TO ARBITRATE—INTENT.

    A contract between a nightclub and an entertainer providing that the provisions of any agreement then existing between the nightclub and the American Guild of Variety Artists were incorporated by reference and would govern the engagement covered by the contract and a provision for arbitration in the agreement incorporated by reference manifested the agreement to arbitrate disputes with sufficient clarity and directness to make it enforceable under New York law.

4. LABOR RELATIONS—STATUTES—LABOR MANAGEMENT RELATIONS ACT.

    The Labor Management Relations Act is the source of new Federal labor law, to be fashioned by the courts, concerning suits for violation of contract between an employer and a labor organization representing employees in an industry affecting commerce (29 USCA, § 185[a]).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 41 Am Jur, Pleading §§ 340–342.
[2] 5 Am Jur 2d, Arbitration and Award §§ 11, 14, 16.
[3] 48 Am Jur 2d, Labor and Labor Relations §§ 1251, 1257.
[4] 48 Am Jur 2d Labor and Labor Relations §§ 391–393, 1291, 1296.
[5] 48 Am Jur 2d, Labor and Labor Relations § 1317.
[6] 48 Am Jur 2d, Labor and Labor Relations §§ 417, 421.

5. LABOR RELATIONS—CONTRACTS—CHOICE OF LAW—FEDERAL LAW.
   New York law does not necessarily govern an employment contract even though the contract so provides where the employment relationship is such that it is governed by the Federal Labor Management Relations Act (29 USCA, § 185[a]).

6. LABOR RELATIONS—CONTRACTS—FEDERAL LAW.
   The parties to an employment contract cannot, by specifying that one of the parties is an employee and not an independent contractor, foreclose inquiry as to the actual relationship of the parties to determine whether Federal labor law governs the contract.

Appeal from Wayne, Charles Kaufman, J. Submitted Division 1 April 14, 1970, at Detroit. (Docket No. 7612.) Decided March 29, 1971.

Complaint by The Roostertail, Inc., against Patti Page, Pattack, Inc., the American Guild of Variety Artists, and David Mann, for declaratory judgment that it is not bound by the results of an arbitration proceeding instituted by defendants Page and Pattack. Summary judgment for defendants. Plaintiff appeals. Reversed and remanded for further proceedings.

*Kerr, Wattles & Russell* (by *Richard D. Weber*), for plaintiff.

*Butzel, Eaman, Long, Gust & Kennedy* (by *George E. Brand, Jr.* and *George E. Ward*), for defendants Patti Page and Pattack, Inc.

*Hathaway, Ricard, Hathaway & Hathaway* (by *James A. Hathaway*), for defendants American Guild of Variety Artists and David Mann.

Before: T. M. BURNS, P. J., and LEVIN and DAVIDSON*, JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Per Curiam. The plaintiff, The Roostertail, Inc., commenced this action seeking a declaratory judgment that it is not bound by the results of arbitration proceedings instituted by defendants Patti Page and Pattack, Inc. The trial judge entered a summary judgment dismissing Roostertail's complaint on the ground that it had not exhausted its arbitration remedies. We reverse and remand for trial because there are factual questions that must be resolved before the legal issues can be decided.

Patti Page is a nationally-known entertainer; Pattack is a corporation which contracts for the delivery of her services. Roostertail is a Detroit night club and restaurant.

Page and Pattack agreed with Roostertail under a contract dated July 30, 1968, that Page would appear at the Roostertail during the period October 17–26, 1968, for the sum of $17,500. The dispute arises out of Page's and Pattack's claim that the Roostertail prevented Page from performing during that period.

Page and Pattack filed a claim against Roostertail on October 23, 1968, with the Detroit branch of the American Guild of Variety Artists (AGVA).

The July 30, 1968 contract between Roostertail, Page, and Pattack provided that all the provisions of any agreement then existing between Roostertail and AGVA were incorporated by reference and would govern the engagement covered by the contract. Roostertail and AGVA had previously entered into a contract called the minimum basic agreement. This agreement, dated November 14, 1961, provided for arbitration of disputes between operators and artists:

"7. ARBITRATION: The employer agrees that any and all controversies and disputes arising out of or relating to this agreement or out of the em-

ployment of Artists hereunder shall be settled and determined by AGVA."

The minimum basic agreement further provided that the operator agreed that the employment of artists was subject to all AGVA rules and regulations; and that "this agreement shall be construed in accordance with the laws of the State of New York".

A hearing was scheduled on December 5, 1968, on the Page and Pattack claim. The parties appeared on that date before the Detroit branch executive committee of AGVA. No transcript of the proceedings was made. Roostertail alleges that:

(a) there was no contractual basis for the jurisdiction of the arbitrators;

(b) Roostertail had no say in the selection of the arbitrators;

(c) a request for the names of the arbitrators prior to the hearing was denied;

(d) the arbitrators could not be impartial because of their membership in AGVA;

(e) one of the arbitrators could not be considered impartial because of his involvement in a separate dispute between the Roostertail and a third party;

(f) no copy of the complaint was given before the hearing although one was requested;

(g) Page did not appear at the hearing;

(h) one of the arbitrators objected to the presence of Roostertail's attorney;

(i) the arbitrators did not take an oath or otherwise follow the procedure required by New York law;

(j) the rules of evidence were not followed;

(k) the conduct of the arbitrators showed evident partiality; and

(l) "the nature of the proceedings, including the question of the binding effect was never clarified

and the arbitrators themselves had varying opinions with respect thereto."

Roostertail claims that it requested that Page, Pattack, and AGVA stipulate that its objections would not be waived if it proceeded at the hearing on the merits. When the stipulation was refused, Roostertail's representatives left the hearing.

After they had left, the branch executive committee proceeded to hear the evidence submitted in behalf of Page and Pattack. On December 18, 1968, Roostertail received notice of the "recommendation" of the branch executive committee that Roostertail be required to pay Page and Pattack $17,500. This notice included a copy of the rules for appealing the recommendation to the National Appeals Board of AGVA. The time given for taking this appeal ended on December 28, 1968; Roostertail did not appeal. On December 31, 1968, Roostertail commenced this action for a declaratory judgment and other relief.

Roostertail says that it did not prosecute an appeal to AGVA's National Appeal Board because it feared that if it did that would constitute a waiver of its objections and because it could not hope for a favorable decision because there had been no hearing on the merits and "it is doubtful that the monetary restrictions on appeal could have been met". The monetary restriction referred to is a requirement that the entire amount recommended to be paid ($17,500) be deposited with AGVA.

Roostertail claims that the arbitrability of the dispute is governed by New York law and that the alleged agreement to arbitrate was not "clear and direct" as required by New York law.[1]

---

[1] In *Riverdale Fabrics Corp.* v. *Tillinghast-Stiles Company* (1954), 306 NY 288 (118 NE2d 104, 106), the New York Court of Appeals refused to find an agreement to arbitrate from a provision which said the contract was subject to trade association rules, which rules

Our review of the contract documents convinces us that the obligation to arbitrate is neither hidden nor ambiguous and we, therefore, conclude that the parties manifested their agreement to arbitrate disputes with sufficient clarity and directness.

Roostertail alternatively argues that the procedures followed by AGVA do not conform to New York law because under the law of that state a party cannot be an arbitrator in its own dispute.[2]

---

contained an arbitration provision. This case is distinguishable because the contract there, in contrast with the contract here, contained no language incorporating the rules by reference (a distinction stressed by the New York Court in distinguishing an earlier case) and because the minimum basic agreement, which contains the arbitration clause, was signed by the Roostertail itself. It could not properly be said here that the parties have been "led into arbitration unwittingly through subtlety."

[2] In *Matter of Cross & Brown Company* (1957), 4 App Div 2d 501 (167 NYS2d 573, 576), the appellate division for the First Department, New York Supreme Court, ruled that a provision in an employment contract naming the board of directors of the employer company as arbitrators for any dispute arising out of the contract was "not a contract to arbitrate, but an engagement to capitulate". Although a person with a known interest in the matter or relationship to a party can be named an arbitrator, "no party to a contract, or someone so identified with the party as to be in fact, even though not in name, the party, can be designated as an arbitrator to decide disputes under it". The agreement was held to be void despite an offer by the company to appoint neutral arbitrators. *Cf. Commonwealth Coatings Corp.* v. *Continental Casualty Co.* (1968), 393 US 145 (89 S Ct 337, 21 L Ed 2d 301), reh. den. 393 US 1112 (89 S Ct 848, 21 L Ed 2d 812).

*Astoria Medical Group* v. *Health Insurance Plan of Greater New York* (1962), 11 NY2d 128 (182 NE2d 85), relied on by the defendants, is not in point. There the contract provided for two "partisan" arbitrators, one selected by each side, who would choose a third "neutral" arbitrator. It was held that the selection of partisan arbitrators was not inconsistent with arbitration but this was said in the context of a tribunal where the deciding vote would, presumably, be cast by a neutral arbitrator.

In recent years courts and legislatures have come to look with great favor on agreements to submit disputes to arbitration. The original reluctance to allow arbitrators to come between an aggrieved party and the courts was in part attributable to an unwillingness to believe that a party would give up juridical safeguards. Not surprisingly, when the courts became persuaded of the benefits of arbitration, they began to scrutinize the arbitration process.

"The price of judicial support for arbitration is a measure of judicial intervention". Cox, Reflections upon Labor Arbitration, 72 Harv L Rev 1482, 1488 (1959).

Members of AGVA's local branch executive committee composed the hearing panel. It appears, however, that the branch executive committee only makes a recommendation, and that, at least where the appeal remedy is pursued, the award is made by the National Appeal Board. The appeal to that board is on the record, but either party may submit additional affidavits and "any other pertinent matter pertaining to the appeal for consideration by the National Appeal Board". Without knowing more than we do about the composition of the appeal board, the nature of the appeal, the powers of the appeal board, and the actual procedures followed in AGVA arbitrations, we are unable to decide whether the AGVA method of arbitration complies with New York law.

And whether the AGVA procedures do or do not comply with New York law, the law of that state does not necessarily govern.[3] Under Federal labor law, which Page, Pattack, and AGVA claim preempts New York law, "final adjustment by a method agreed upon by the parties"[4] is authorized. In

However, objections to arbitration may be raised in the courts only at certain times and by certain procedures. Recognizing that judicially imposed safeguards to some extent undercut arbitration, the courts have subjected arbitration to only very limited restrictions.

Labor arbitration, it has been said, is both a judicial process and an extension of collective bargaining; if it is to continue as the chosen method of the parties it must balance the merits of the dispute against the result which the relative economic power of the parties would produce. 3 Werne, Administration of the Labor Contract, § 56.01, p 232. This dual nature of arbitration is to be observed in the commercial field as well.

A contract provision may, however, cease to be a contract for arbitration at all and may constitute a mere expression of the adhesive power one party holds over another. The use of the word "arbitration" does not necessarily entitle a contract provision for arbitration to the respect accorded true arbitration by the courts.

[3] Neither party contends that Michigan law applies. Nor has it been contended that the National Labor Relations Act bears on the issues presented.

[4] "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing

*Haynes* v. *United States Pipe & Foundry Company*
(CA 5, 1966), 362 F2d 414, 417, the contract allowed
the manager of the plant to make the final deter-
mination of a dispute, subject only to the union's
right to strike.  In upholding this method of "final
adjustment" against the claim of an employee who
contended that he had been wrongfully discharged,
the United States Court of Appeals for the Fifth
Circuit observed:

"The statutory policy statement, § 203(d), *supra*
[Taft-Hartley Act, 29 USCA § 173(d)], makes no
mention of arbitration.  As previously noted, the
Supreme Court has said that the policy of § 203 (d)
' * * * can be effectuated only if the means
chosen by the parties for settlement of their dif-
ferences under a collective bargaining agreement is
given full play.' *United Steel Workers of America*
v. *American Manufacturing Co.* (1960), 363 US 564
(80 S Ct 1343, 4 L Ed 2d 1403).  The policy con-
templates whatever means the union and the em-
ployer may have chosen to settle grievances."

The United States Supreme Court has held[5] that
the Labor Management Relations Act (LMRA) is
the source of a new Federal labor law, to be
fashioned by the courts, concerning "suits for vio-
lation of contracts between an employer and a labor
organization representing employees in an industry
affecting commerce".  29 USCA § 185 (a) (LMRA
1947, § 301[a]).

But it is not clear that Roostertail is an "em-
ployer", or that Patti Page is an "employee" and

collective-bargaining agreement."  29 USCA § 173(d)  (LMRA 1947,
§ 203[d]).
   [5] *Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers of
America* v. *Lucas Flour Company* (1962), 369 US 95 (82 S Ct 571,
7 L Ed 2d 593); *Textile Workers Union of America* v. *Lincoln Mills
of Alabama* (1956), 353 US 448 (77 S Ct 912, 1 L Ed 2d 972).

not an independent contractor.[6]   Although the master basic agreement provides that, at least for certain purposes, "all Artists shall be considered as employees and not independent contractors", the parties cannot foreclose inquiry as to whether Federal law governs.   The actual relationship of the parties, not merely their characterization of that relationship, is relevant.   The distinction between an independent contractor and an employee must be determined from the total relationship of the parties, including, but not limited to, the terms of their contract.   The true nature of the relationship cannot be determined from the record before us.[7]

If Federal law governs, this would not preclude the application of so much of New York law as is deemed not inconsistent with the policy of Federal labor law.   The New York law might become applicable either as part of the "final adjustment method" agreed upon by the parties or as a source of the still developing Federal law.

Nor are we in a position to express an opinion regarding the possible application of the doctrine of exhaustion of remedies.   We have been told little about the scope of the remedies or inquiry before the National Appeal Board of AGVA.   We are inclined to the view, but need not definitively decide, that questions that could not be raised before that tribunal can be raised in a court of law.[8]

Since the trial judge did not refuse to declare the rights of the parties in the exercise of discretion, we need not consider the extent of his discretion or whether it was abused in this case.[9]

---

[6] Cf. American Guild of Musical Artists, AFL-CIO (National Symphony Orchestra Association) (1966), 157 NLRB 735.

[7] Cf. United States v. United Scenic Artists Local 829 of the Brotherhood of Painters, Decorators and Paperhangers of America (SD NY, 1961), 27 FRD 499.

[8] Cf. Long v. City of Highland Park (1950), 329 Mich 146, 149.

[9] Strager v. Wayne County Prosecuting Attorney (1968), 10 Mich

The intricate legal issues presented may well dissolve when the facts are more fully developed. Summary judgment should not have been granted.

Reversed and remanded for further proceedings consistent with this opinion. Costs to abide the event.

App 166, 173; *cf. Devenco, Incorporated* v. *Emerson Radio & Phonograph Corporation* (1958), 12 Misc 2d 949 (174 NYS2d 132, 136).