■ Bangor Punta Operations, Inc., Respondent, v. Carnaby Knitting Corp. et al., Appellants.— Judgment, Supreme Court, New York County, entered

on March 24, 1971, granting petitioner's motion to stay arbitration and denying cross motion to dismiss petition, so far as appealed from, affirmed. Respondent shall recover of appellants $30 costs and disbursements of this appeal. In affirming, we concur with the conclusion arrived at by Special Term, that the parties herein by their own language contrived for the extinguishment of any obligation or liability for either party if the purchase and sale of either of petitioner's Crown or Carnaby Divisions was not consummated. The language of both the Crown and Carnaby agreements explicitly called for contemporaneous and interdependent closing, and the escrow letter of November 25, 1970 expressly said if either arrangement fell, both were to fall. This letter went to the extremity of directing the escrowee to destroy the Carnaby agreement should the closing of the Crown agreement not take place on December 2, 1970. And it did not take place. The parties, in effect, made a suicide pact. And, ironically enough, it was the respondents who brought about the extinguishment of liabilities by protesting the financial schedules of the petitioner seller. Since this objection was not resolved, no contractual obligations ever came into being, unlike *Matter of Uraga Dock Co.* (*Mediterranean & Oriental S. S. Corp.*) (6 A D 2d 443) cited in the dissenting opinion, which merely involved the failure to make a payment. In the contract before us, the seller was under no obligation to satisfy the purchasers. It merely undertook to furnish financial schedules. The purchasers found these unsatisfactory and so elected to abort the arrangements. Thus, we have no valid contract because the agreement, such as it was, including the provision for arbitration, never took effect. (See 10 N. Y. Jur., Contracts, § 253 and cases cited; also *Matter of Rosenbaum* [*Amer. Sur. Co. of N. Y.*], 11 N Y 2d 310, 314.) And without the underlying existence of an enforceable contract, there is no right to arbitration. (*Matter of Kramer & Uchitelli*, 288 N. Y. 467, 471.) And the underlying contract must be expressly apparent, not simply assumed by implication. As stated in *Matter of Lehman v. Ostrovsky* (264 N. Y. 130, 132): "No one is under a duty to resort to arbitration unless by clear language he has so agreed"; or as noted in *Matter of Riverdale Fabrics Corp.* [*Tillinghast-Stiles Co.*] (306 N. Y. 288, 289) an agreement to arbitrate will not be extended "'by construction or implication'". Since these parties plainly intended they should have the right and power not to conclude, only a tortured construction can find a viable contract sufficient to enforce arbitration. Concur — Capozzoli, J. P., McGivern, Markewich and McNally, JJ.; Steuer, J., dissents in the following memorandum: Beginning in November 1970, the petitioner and two individuals, Rabin and Rosenthal, started negotiating for the purchase by them of all of the assets of two of the departments of petitioner, called, respectively, the Crown Division and the Carnaby Division. The negotiations progressed to the execution of two written agreements, each dated November 25, 1970. The agreements were between petitioner and respondents, two corporations set up by Rabin and Rosenthal to make the purchase. Both writings contain identical arbitration clauses covering "any controversy arising out of or in connection with this Agreement." Due to the circumstances the agreements were quite different. The Carnaby Division's assets consisted in very large part of machinery, and the agreement merely provided for the transfer of this property and payment of the agreed price. The Crown Division owned, in addition to machinery, yarn, piece goods, accounts receivable and trade names. The agreements provided for a closing on December 2, 1970. However, as it was a basic condition of the over-all transaction that both Divisions or neither be transferred, the Carnaby agreement was placed in escrow, not to be enforced unless and until the closing provided for in the Crown agreement took place. The Crown agreement pro-

vided for the delivery of certain schedules. It provided further that these schedules had to be satisfactory to Crown. The schedules supplied were not satisfactory to Crown and, upon their so stating, petitioner claimed the transaction to be at an end. Respondents demanded arbitration, and this proceeding was instituted to stay arbitration. Special Term has stayed arbitration on the theory that the parties themselves provided that in the event of a failure to close the Crown agreement, the Carnaby agreement provided that neither party shall have any obligation or liability under the agreement. And the Crown agreement is subject to each party's satisfaction in its discretion as to the performance by the other of the precedent conditions. From this it is concluded that there was no agreement involving any obligation and, hence, no contract, including no contract to arbitrate. It is quite clear that the minds of the parties met, as evidenced by the written agreements. One of the terms on which they met was that any controversy arising out of what they met on was to be decided by arbitration. These conclusions cannot be challenged. The stay of arbitration is granted on the theory that by failure of performance of a term no further obligation rested on either party. That, however, is something arising out of the contract and is a matter specifically agreed to be arbitrated (*Matter of Uraga Dock* [*Mediterranean & Oriental S. S. Corp.*], 6 A D 2d 443). Once the minds of the parties have met, all questions are for the arbitrators (*Matter of Lipman* [*Haeuser Shellac Co.*], 289 N. Y. 76). Essentially the distinction is between conditions precedent to the making of a contract and conditions precedent to its performance. In the former case, almost universally, factors dehors the contract itself, such as fraud or duress, are questions for the court. In the latter case they are for the arbitrators. The order staying arbitration should be reversed and the petition dismissed.