Trung Dai Lam v Young Mee Lee (2024 NY Slip Op 50694(U))

[*1]

Trung Dai Lam v Young Mee Lee

2024 NY Slip Op 50694(U)

Decided on June 6, 2024

City Court Of Ithaca, Tompkins County

Peacock, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 6, 2024
City Court of Ithaca, Tompkins County

Trung Dai Lam, Claimant,

against
Young Mee Lee, HOWARD HANNA, Defendants.

Docket No. SC-49802-24/IT

Seth J. Peacock, J.

PROCEDURAL BACKGROUND
Claimant commenced this small claim on April 19, 2024, seeking a security deposit of $2500.00 made by Young Mee Lee and held by Howard Hanna. A trial was held on May 16, 2024. At the beginning of the trial, the Court found that Young Mee Lee was a necessary party and joined her as a Defendant pursuant to CPLR § 1001. Young Mee Lee had the assistance of a court-appointed Korean interpreter.

FACTS
Claimant and Young Mee Lee executed a contract for the sale and purchase of real property located at 1654 Trumansburg Road, Ithaca, New York. Under the contract, Young Mee Lee paid a $2500.00 security deposit to be held by Howard Hanna. The security deposit is the subject of this small claim. The structural contingency of the contract was satisfied on April 1, 2023 by a $10,000 reduction in the purchase price. The financing contingency's commitment date was originally set for April 27, 2023 but was extended to May 5, 2023. Young Mee Lee testified, and Claimant does not contest, that she applied for a mortgage. However, it does not seem that Young Mee Lee obtained a mortgage. On August 17, 2023, Claimant declared time to be of the essence and set September 5, 2023 as the date of the closing. The closing did not occur.

 PARTY'S OBLIGATION TO READ A CONTRACT
Young Mee Lee testified, through the Korean interpreter, that she had trouble understanding the papers and the home-buying process and that she depended on her daughter for translation. However, "[a] party is under an obligation to read a document before signing it, and cannot generally avoid the effect of the document on the ground that he or she did not read it or know its contents." Matter of Augustine v BankUnited FSB, 75 AD3d 596, 597 (2d Dept 2010). The Court finds that Young Mee Lee had both the time and opportunity to understand the documents she signed. Indeed, Young Mee Lee's testimony about her efforts in Korea to give her daughter power of attorney in a timely manner establishes that she understood the deadlines of the process.

 PART B OF THE CONTRACT
The Contract for Sale and Purchase of Real Property states that it "consists of Part A, Part B as recorded in the Tompkins County Clerk's Office as Instrument Number 2017-05133 . The form of this Contract has been approved by the Ithaca Board of Realtors, Inc. and the Tompkins County Bar Association, Inc." Plaintiff's Exhibit 1, page 1, section 1. This constitutes a valid contract. The Court of Appeals has held that a contract "may be pieced together out of separate writings, connected with one another either expressly or by the internal evidence of subject-matter and occasion." Crabtree v Elizabeth Arden Sales Corp., 305 NY 48, 54 (1953).
[T]here is no requirement that the terms of the agreement be embodied in a single writing. Thus, so long as one writing, signed by the party to be charged, establishes the contractual relationship between the parties, the remaining terms of the agreement may be expressed in other writings, either signed or unsigned, which must connect with the signed writing and one another, either expressly or by the internal evidence of subject matter and occasion, and refer to the same transaction.
In re Urdang, 304 AD2d 586, 587 (2d Dept 2003). Young Mee Lee acknowledged that Part B was incorporated into the contract that she signed. Plaintiff's Exhibit 1, page 4. Even if she never read Part B, a party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms. Level Export Corp. v. Wolz, Aiken & Co., 305 NY 82, 87 (1953).
However, although the Disclosure Forms were introduced into evidence, "Part B as recorded in the Tompkins County Clerk's Office as Instrument Number 2017-05133" was never introduced into evidence. Part B sets forth and specifies the buyer's obligations to obtain financing. Plaintiff's Exhibit 1, page 2, section 5. Without Part B, the contract is ambiguous. See Gaudette v Gaudette, 222 AD3d 1313 (3d Dept 2023). Yet striking down a contract as indefinite and meaningless is a last resort. Id. at 1315.
Where the submissions of the parties are insufficient to resolve the ambiguities in a contract, a trial court should hold "an evidentiary hearing to allow the parties to submit further extrinsic evidence to aid the court in its attempt to resolve the ambiguities and, if possible, to ascertain the parties' intent with regard to the [ ] agreement." Gaudette, 222 AD3d at 1317. By a letter to the parties dated May 20, 2024, the Court reopened the proof and invited the parties to submit Part B of the contract. Part B was submitted to the Court by Defendant Howard Hanna by email on May 23, 2024. The Court forwarded Howard Hanna's email to the other parties on May 24, 2024. No objection was raised to the submission of Part B of the contract. Indeed, Claimant subsequently submitted Part B herself.

 FAILURE TO CLOSE
Claimant notified Young Mee Lee on August 17, 2023 that time was of the essence and set September 5, 2023 as the closing date. "It is well settled that a vendor of real property may convert an agreement in which time is not of the essence to one in which time is of the essence by giving clear and unequivocal notice to the vendee that a specified reasonable time for the completion of his obligation will be deemed of the essence." Shannon v. Simon, 128 AD2d 859 (2d Dept 1987). If there is no financing contingency, "regardless of whether or not the [buyer] obtained mortgage financing, the [seller is] entitled to require the [buyer] to perform on the law day, if [he] so chose." Zev v. Merman, 134 AD2d 555, 558 (2d Dept 1987).
Claimant mistakenly believes that the financing contingency was waived on May 5, 2023 merely by the passage of that date. "[S]uch waivers are effectuated in situations where a contract clearly provides for notification of a purchaser's failure to obtain financing by a specified [*2]date ." Boyd v Haritidis, 239 AD2d 820, 821 (3d Dept 1997) (emphasis added); see Perrino v Hogan, 175 AD2d 478, 479 (3d Dept 1991) (mortgage contingency deemed waived under the terms of the contract because buyers did not notify sellers in writing of their inability to obtain a mortgage). However, nothing in Part A or B of the contract or the Extension of Contract Terms requires the Buyer to give a notice to avoid a waiver, and nothing states that the financing contingency is waived by the mere passing of the commitment date. On the contrary, the financing contingency is removed under paragraph 5.5.3 of Part B only when the Buyer accepts a commitment, and paragraph 5.5.4 only removes the financing contingency when certain requirements are met in the case of a conditional commitment. When they executed the Extension of Contract Terms, the parties did not waive the condition of obtaining financing. Plaintiff's Exhibit 1, Extension of Contract Terms, paragraph 6. And paragraph 5.5.6 of Part B even states that, without any termination notice from either party, "this Contract will continue in full force and effect still subject to this contingency" (emphasis added). It is clear, then, that the mere passage of the commitment date did not waive the financing contingency.
Therefore, after May 5, 2023, the contract remained contingent upon financing under paragraphs 5.5.1 and 5.5.6 of Part B. There is no evidence that the contingency was ever removed under the terms of the contract. Claimant failed to establish that Young Mee Lee obtained financing, was offered financing that she was bound to accept, or accepted a conditional commitment, any of which might have removed the financing contingency under paragraphs 5.5.3, 5.5.4, or 5.5.5 of Part B. To be sure, Plaintiff's Exhibit 2 documents an agreement dated July 11, 2023 between LendSure Mortgage, Corp., ISAOA/ATIMA and Young Mee Lee, under which Young Mee Lee agreed to place $9450.00 into escrow at closing and contact a contractor to complete certain work on the home at her own expense. Plaintiff's Exhibit 2, Escrow Agreement. But this agreement was "intended solely for the protection of Lender in disbursing to Borrower the full mortgage loan proceeds before final completion of the Work." Id. at paragraph 9. It is insufficient to show that the lender actually issued a commitment or loan approval that Young Mee Lee accepted or was bound to accept under paragraphs 5.5.3, 5.5.4, or 5.5.5 of Part B.
Furthermore, paragraphs 5.5.1 and 5.5.4 of Part B require the Buyer to furnish the Seller with a copy of a loan commitment or conditional commitment. However, no loan commitment was introduced into evidence. The Court can only conclude that Claimant never received a loan commitment from the Buyer. Without receiving a loan commitment from the Buyer, Claimant had no reason to believe the financing contingency had been waived.
With the financing contingency still in effect, and with no financing having been obtained by Young Mee Lee, Claimant was not entitled to declare time to be of the essence. Vickery v. Parrinello, NY Slip Op. 50244(U) (Civ Ct, Richmond County 2002). "Given all of this, particularly that the buyers had not obtained a conforming mortgage commitment . . . at worst, from the seller's perspective, the buyers were entitled to treat the time of the essence demand as a nullity, obviating any default, and entitling them to a return of the down payment they had tendered." Id. Paragraph 5.5.5 of Part B even states, "the Buyer's obligations hereunder are conditioned only on issuance of a Commitment." Therefore, Young Mee Lee's failure to close was not a breach of the contract.

 FAILURE TO OBTAIN FINANCING
Nothing in the contract states that the failure to obtain financing by the commitment date will automatically entitle the Seller to the security deposit. However, paragraph 1.5 of Part B [*3]specifies that the Seller is entitled to any deposits made by the Buyer if the Buyer fails to perform any of her obligations under the contract. Although Young Mee Lee's failure to close was not a failure to perform under the contract, the Court must examine whether her failure to obtain financing constituted a failure to perform that would entitle Claimant to the deposit under paragraph 1.5 of Part B.
"Where a contract for the sale of real property contains a mortgage contingency clause, '[a]s long as purchasers exert a genuine effort to secure mortgage financing and act in good faith, they are entitled to recover their down payment if the mortgage is not in fact approved through no fault of their own.'" 2 Old, LLC v Mayer, 90 AD3d 911 (2d Dept 2011); see Macho Assets, Inc. v Spring Corp., 128 AD2d 680 (2d Dept 1987) (holding that buyer was not required to apply to more than one lender and that buyer fulfilled her contractual obligations even though she did not obtain a mortgage, and using the terms "deposit" and "down payment" interchangeably); see also Chao v Chang, 192 AD2d 649 (2d Dept 1993) (holding that buyer fulfilled her contractual obligations even though she did not qualify for a mortgage, and using the terms "deposit" and "down payment" interchangeably). "Absent an express promise by a prospective purchaser to apply to a particular bank or to make a specified number of loan applications, a mortgage contingency clause in a sales contract only requires a good-faith attempt to procure a loan in the amount specified. In some situations this may be satisfied by one application." Blask v. Miller, 186 AD2d 958, 959 (3d Dept 1992). Only when the contract requires the buyer to use "diligent efforts" to obtain financing does the buyer's obligations go "somewhat beyond a mere good-faith effort" and require her to "pursue all reasonable sources of potential financing." Id. Under Blask, "diligence" language would normally require Young Mee Lee to pursue all reasonable sources of financing.
However, paragraph 5.5.2 of Part B specifies that the Buyer is only required to "apply for financing with at least one lender" (emphasis added) and "pursue such application with diligence." It does not state that the Buyer must apply with at least two or at least three lenders. By the plain language of paragraph 5.5.2, the Buyer has the option to apply to only one lender. She is therefore not obligated to diligently pursue all reasonable sources of potential financing. Instead, paragraph 5.5.2 only requires the Buyer to diligently follow through with any application(s) she actually initiates. This intention is made clear by the other language in paragraph 5.5.2's last sentence, which requires the Buyer to furnish the lender with complete information, pay all fees, and cooperate with the lender to obtain a commitment. Simply put, the "diligence" requirement in paragraph 5.5.2 is not the same "diligence" requirement in Blask.
Young Mee Lee applied for financing with at least one lender. Claimant failed to show that Young Mee Lee failed to pursue this application with diligence. Young Mee Lee testified about the lending company's delays and the interest rate changing from 6% to over 10%. Her daughter testified about the extensive "back and forth with the company and a lot of changing rates as well." There is no evidence that the interest rate changes resulted from some failure by Young Mee Lee to cooperate with the lender in good faith. Claimant has simply failed to prove that Young Mee Lee's failure to obtain a mortgage constituted a failure to perform under the contract.

TERMINATION OF CONTRACT
Regardless, the contract was terminated by Claimant's attorney on December 22, 2023. Plaintiff's Exhibit 4. Paragraph 4.2.1 of Part B clearly states that if the offer is "accepted and subsequently terminated as permitted under the terms of this Contract, the deposit(s) will be [*4]released from the escrow account and delivered to the Buyer." The offer was accepted and Claimant's own attorney subsequently terminated the contract. This termination was permitted under paragraph 5.5.6 of Part B. Therefore, pursuant to paragraph 4.2.1, the deposit must be returned to the Buyer, Young Mee Lee.

CONCLUSION
Judgment is for Young Mee Lee against Howard Hanna in the amount of $2500.00, without costs. The escrow agent, defendant Howard Hanna, is directed to return to Young Mee Lee her deposit in the amount of $2500.00.
This constitutes the Decision and Judgment of the Court entered upon notice to all parties. 
Dated: June 6, 2024
________________________________
HON. SETH PEACOCK
Ithaca City Court Judge